*Decisions will be entered under Rule 50.*

BESSIE B. HOPKINSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97014. Promulgated August 20, 1940.

*Herman Goldman, Esq.*, and *Milton J. Levitt, Esq.*, for the petitioner.
*Conway N. Kitchen, Esq.*, for the respondent.

OPINION.

LEECH: The issues for decision are (1) whether payments, made under the contract between Hopkinson and the Rubber Co. and received by petitioner as beneficiary of the trust of which the contract formed the corpus, are ordinary income or capital gain in the hands of petitioner, and (2) whether payments made by the trustee for legal services are includable in petitioner's net income under section 162 (b) of the Revenue Act of 1934.

Petitioner contends that, since payments under the contract between her deceased husband, Ernest Hopkinson, and United States Rubber Co. were capital gains as to her husband, they are also capital gains to her as beneficiary of a trust, the corpus of which, as a result of an assignment from Hopkinson to the trustee, comprises the said contract. In his deficiency notice respondent took the position that the payments under the contract were royalty payments rather than payments of consideration for the sale of a capital asset, and hence were taxable as ordinary income. On brief, he does not press this contention, but instead urges that, since there was no sale or exchange by petitioner or the trustee, she is not entitled to the percentage provisions of section 117 of the Revenue Act of 1934.

We think it is clear that Ernest Hopkinson sold his patents and patent applications to the Rubber Co. in 1930 and that all payments received by him under the contract of sale resulted from the sale of capital assets, were not royalties, and were, so far as he was concerned, taxable at capital gain rates. As petitioner aptly says in her brief: "It is obvious that the parties to the 1930 agreement intended to effect a sale of the inventions covered thereby. The language of the agreement, the designation of the parties and the desire to terminate the then existing license agreement, make this conclusion inescapable. It is bolstered up by the fact that in addition to the general assignment of the patents provided for by the 1930 agreement, the patents were individually assigned by HOPKINSON and the assignments were recorded in due course. It is impossible to conceive of what else could have been done or provided for which would have more clearly indicated the intention of the parties to the contract and which would have more definitely characterized the nature of the transaction covered thereby." See Samuel E. Diescher, 36 B. T. A. 732; affd., 110 Fed. (2d) 90; certiorari denied, 310 U. S. 650; Rotorite Corporation, 40 B. T. A. 1304; Helvering v. Elbe Oil Land Development Co., 303 U. S. 372; Littlefield v. Perry, 88 U. S. 205; Rude v. Wescott, 130 U. S. 152; Herzog v. Heyman, 151 N. Y. 587; 45 N. E. 1127; Dalzell v. Fahys Watch Case Co., 138 N. Y. 285; 33 N. E. 1071. See also Kiesau Petroleum Corporation, 42 B. T. A. 69. As far as Ernest Hopkinson was concerned, moreover, such payments were taxable to him in the years received. Burnet v. Logan, 283 U. S. 404.

The question remains, however, as to whether petitioner is entitled to treat receipts under the contract as capital gains. It is to be noted at the outset that she is entitled to the percentage provisions, if the trustee is. Arthur Letts, Jr., 30 B. T. A. 800; affd., 84 Fed. (2d) 760; McNaghten v. United States, 17 Fed. Supp. 509.

The portions of section 117 of the 1934 Act which are here relevant are set out in the margin.[1] The dispute really centers about the mean-

---

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

*     *     *     *     *     *     *

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

(c) DETERMINATION OF PERIOD FOR WHICH HELD.—For the purpose of subsection (a)—

*     *     *     *     *     *     *

(2) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

ing of the words in subsection (b), "property held by the taxpayer." Is petitioner to be denied the benefit of the percentage, provisions because neither she nor the trustee sold the patents and patent applications, but only became entitled to the proceeds of the sale after it was made through the assignment of the contract?

Research has disclosed no case in point, although there are intimations in *United States* v. *National City Bank of New York*, 21 Fed. Supp. 791, to the effect that a trustee in somewhat similar circumstances might compute gain at capital rates. We think, however, that the scheme of the revenue acts and certain analogous doctrines entitle petitioner to treat the payments under the contract as capital gains. Section 117 (c) (2) provides that in determining the period for which a taxpayer has held property however acquired there shall be included the period for which the property was held by any other person, if under section 113 such property has the same basis in whole or in part in the taxpayer's hands as it would have in the hands of such other person. Under section 113 (a) (3), if the property was acquired after December 31, 1920, by a transfer in trust, the basis is the same as it would be in the hands of the grantor. In passing upon the effect of an earlier counterpart of section 117, section 206 of the Revenue Act of 1921, the Court in *Helvering* v. *New York Trust Co.*, 292 U. S. 455, enunciated the rule (which was subsequently embodied in section 117 (c) (2) of the 1934 Act) that the donee was deemed to have held the stock for the length of time it had been held by the donor, and for the purpose of computing gain on the sale of such stock was considered *"as having assumed the place of the trustor."* (Emphasis supplied.) The Court also held:

* * * In respect of the legislative purpose to lessen hindrance caused by high normal and surtaxes, there is no distinction between gains derived from the sale made by an owner who has held the property for more than two years and those resulting from one by a donee whose tenure plus that of the donor exceeds that period.

See also *McFeely* v. *Commissioner*, 296 U. S. 102, and *Macy* v. *Helvering*, 82 Fed. (2d) 183.

There is thus discernible a Congressional intent to treat a donee as standing for income tax purposes in the shoes of the donor, explicit in regard to basis and holding period, and inferential as to capital gains. Decisional analogies are to be found in the cases of installment sales, where, upon the sale of an installment obligation, the purchaser of that obligation is required to report income in the same manner as the vendor, *Wobbers, Inc.*, 26 B. T. A. 322; *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479; and in the case of a reorganization, where the earnings of a predecessor corporation retain their character as earnings in the hands of the recipient company, *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667.

In contemplation of law, every payment made by the Rubber Co. was, as we have pointed out, part of the purchase price of a sale of capital assets. The character of these payments in the hands of the recipient was not changed by the fact that the recipient took under an assigned right. Petitioner assumed the duty and obligation of reporting income arising out of the contract. *R. E. Nail et al., Executors*, 27 B. T. A. 33; *Swartz, Inc.* v. *Commissioner*, 69 Fed. (2d) 633; *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; *Commissioner* v. *O'Donnell*, 90 Fed. (2d) 907. We conclude that she likewise received from the assignor the right to report that income at capital rates.

The second issue is whether in computing the net income of the trust subject to taxation in the hands of petitioner the inclusion of $7,500 paid by the trustee for legal fees is proper. It has been held that where the tax liability of the income beneficiary is in issue, rather than the liability of the trustee, and the trust instrument requires the trustee to pay the particular expenses out of trust income, the income beneficiary is taxable only with respect to the net amounts actually distributed to him, regardless of whether as to the trustee the deduction in question is allowable. *Augusta Bliss Reese*, 29 B. T. A. 565; *Gertrude Thompson*, 40 B. T. A. 891; *Mary Helen Cadwalader*, 27 B. T. A. 1078. Without deciding, therefore, whether the trustee was entitled to this deduction, upon the authority of the foregoing cases we sustain petitioner and hold that she is taxable only in respect of the amounts actually distributed to her. In reaching this conclusion we have not neglected respondent's argument to the effect that some of the legal services related to petitioner's right to assign her interest to her children and the resulting tax liabilities, and hence she constructively received a part, if not all, of the $7,500 fee. We think that the tax status and assignability of all interests under the trust were of equal interest to the trustee and fell within the class of objects for which the trustee was specifically authorized to procure legal assistance. Respondent is concluded, therefore, by *Augusta Bliss Reese, supra.*

*Decision will be entered for the petitioner.*