OPINION. Tietjens, Judge: The first issue presents the question of whether the payments in the amount of $100,220.44 received by petitioner from the corporation in 1947 constituted royalties taxable as ordinary income as determined by respondent or a long-term capital gain from the sale of capital assets taxable at capital gain rates as contended by petitioner. The petitioner was the owner of certain letters patent and an invention at the time of the execution of the agreements and assignments involved herein. There is no dispute as to those letters patent and the invention constituting capital assets of petitioners, i. e., “property held by the taxpayer” (and not held primarily for sale to customers in the ordinary course of his trade or business) within the meaning of section 117 (a) (1), Internal Revenue Code, as amended by section 151 (a) of the Revenue Act of 1942.[1] Further, there is no dispute as to those capital assets having been “held for more than 6 months” as provided in section 117 (a) (4), Internal Revenue Code, so that if a sale thereof was made in 1945, then only “50 per centum” of the 1947 installment payments recognized as gain “shall’be taken into account” in computing petitioner’s net income for 1947, as provided in section 117 (b), Internal Revenue Code, both as amended by section 150 of the Revenue Act of 1942. Also, if there was a sale, petitioner makes no contention as to any unrecovered cost basis. On this first issue as presented by the parties, they are in agreement as to the foregoing matters and, under the facts herein, such agreement is in accord with prior decisions. See Carl G. Dreymann, 11 T. C. 153; Edward C. Myers, 6 T. C. 258; Commissioner v. Hopkinson, 126 Fed. (2d) 406, affirming 42 B. T. A. 580; and Samuel E. Diescher, 36 B. T. A. 732, affirmed on other points, 110 Fed. (2d) 90. The evidence herein and more particularly the agreements entered into, present conflicting inferences and although the parties are in agreement as to certain factual circumstances surrounding the transactions involved they disagree .as to the ultimate conclusions of fact and law to be drawn therefrom and the resulting tax consequences. The respondent raises no question as to the transactions being bona fide and for a business purpose. Further, he raises no question as to the assignments of May 22,1945, effectively transferring ownership of the letters patent and invention from petitioner to the corporation. However, he contends that such transfer was not a sale for an adequate consideration, but was a gift or contribution of capital to the corporation which petitioner controlled as president and majority stockholder and, further, that the 1947 payments to petitioner were royalties under the January 4, 1926, agreement which continued in full force and effect. Respondent advances the following arguments in support of his position: That by mutual consent of the parties thereto the nonexclusive license agreement of January 4, 1926, was extended to embrace all drinking fountain and water cooling equipment inventions developed by petitioner during an indefinite period of years including the taxable year and by its terms petitioner was entitled to receive royalties in the sum of 5 per cent of the corporation’s net sales of devices incorporating inventions developed by petitioner; that the January 4,1926, agreement was not superseded by but was merely attached as an exhibit to a supplemental agreement of February 7,1945, which latter agreement was by its terms, for the purpose of terminating “the payment of royalties due” under the earlier agreement upon the death of the petitioner; that since the corporation had a pre-exist-ing and continuing obligation to pay royalties to petitioner the latter’s assignment to the corporation of his valuable right, title, and interest as owner of letters patent and inventions under the terms of the February 7, 1945, agreement, was not supported by any new obligation of the corporation to pay royalties or by any adequate consideration and therefore was not in substance a sale, but instead constituted transfers by gift for the special purpose of terminating, at petitioner’s death, the corporation’s obligation to make royalty payments under the agreement of January 4,1926. In short, respondent contends that under the circumstances herein and without disregarding the actuality of the assignments of May 22, 1945, the amount of $100,220.44 income in question for the year 1947 was not received as consideration for a sale of patents and thus was not a capital gain. Briefly stated, petitioner contends that while the agreement of February 7, 1945, does not use the word sale, it does provide for the assignment of patents theretofore licensed to the corporation and that agreement coupled with the actual assignments of May 22, 1945, evidence the intention of petitioner to sell and of the corporation to purchase the entire rights in and to those patents.. Petitioner further contends that the prescribed payments denominated royalties in reality constitute installment payments of the purchase price for his sale of patents and thus the $100,220.44 payment in question herein was a capital gain realized in the taxable year 1947. In our opinion the character of the income involved herein, i. e., whether ordinary income or a capital gain, must be determined by viewing the transactions of the parties as a whole in order properly to assess the real intent and substance thereof rather than by looking to the form of the separate transactions. Under the January 4, 1926, agreement, as extended by' mutual consent, the corporation had a nonexclusive license to use patents and petitioner, as licensor, had a right to royalties determinable in a specified manner. In 1945 the interested parties determined that for the protection of the business of the corporation it should be the owner rather than the nonexclusive licensee of the patents developed by petitioner. To accomplish that business purpose, the agreement of February 7, 1945, and the assignments of May 22, 1945, were executed. The agreement did not employ words of purchase and sale, but did provide for assignments by petitioner to take effect immediately. The assignments executed did use words of purchase and sale to transfer to the corporation the petitioner’s entire right, title, and interest as owner of specified letters patent and an invention. Both the agreement and each of the assignments mentioned only a nominal cash consideration paid in hand, but the agreement further provided that the assignments be made “upon condition” that, during petitioner’s lifetime, the corporation continue payment of the royalties specified in the license agreement of January 4, 1926. It is clear that the continued payments so provided, constituted the real consideration for the assignments and since those continued payments were to be determined in amount in the same manner specified in the earlier license agreement they were denominated as the “royalties stipulated” and again as the “royalties due” under the attached agreement of January 4, 1926. Prior to the agreement of February 7, 1945, and the assignments of May 22, 1945, the letters patent and an invention were owned by petitioner who was entitled to royalties from his nonexclusive licensee, but thereafter the corporation was the absolute owner thereof and perforce the petitioner was no longer a licensor. Accordingly, the continued payments which the corporation was obligated to make to petitioner as a “condition” for its acquisition of the patents and invention must be deemed to be the purchase price thereof. The salient facts herein are wholly incompatible with the respondent’s contention that petitioner made a gift of his patents in 1945 and thereafter, despite transfer of ownership, was still entitled to royalties under a prior licensing agreement. We have heretofore held that where the owner of a patent transfers his entire interest in the patent itself, the transaction constitutes a sale as distinguished from a mere license regardless of whether the instrument is termed a license agreement or whether the consideration is termed a royalty on the basis of a percentage of sales over a period of years. See Edward G. Myers, supra, and cases therein cited; Carl G. Dreymann, supra; and Kimble Glass Co., 9 T. C. 183. Cf. Cleveland Graphite Bronze Co., 10 T. C. 974, affd., 177 Fed. (2d) 200; and Philip W. McAbee, 5 T. C. 1130. We conclude that petitioner made a sale of letters patent and an invention to the corporation in 1945 and that the payment of $100*-220.44 received by him in 1947 was part of the periodic payments which constituted the purchase price. Since petitioner sold capital assets held for more than six months he realized therefrom in 1947 a long term capital gain of $100,220.44 of which only 50 per cent is to be taken into account in computing his net income for the taxable year 1947. We hold that respondent erred in his determination as to the first issue herein. The second issue involves a claimed deduction, under section 23 (u), Internal Eevenue Code, of $499.50 premiums paid in 1947 on an insurance policy as directed in a separation agreement incorporated in a decree of divorce of petitioner and his wife Nelle. On the facts, we conclude that the insurance policy was merely security for alimony payments to the divorced wife and accordingly upon authority of Meyer Blumenthal, 13 T. C. 28, affd., 183 Fed. (2d) 15; Lemuel Alexander Carmichael, 14 T. C. 1356; and William J. Gardner, 14 T. C. 1445, appealed to CCA-6 September 30, 1950, the claimed deduction is not allowable. On this issue the respondent is sustained. Decision will he entered u/nder Rule 50. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter— (1) Capital assets. — The term “capital assets*’ means property held by the taxpayer (■whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), * * *