VINCENT B. RODGERS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3209–67.   Filed March 6, 1969.

*Thomas J. Kane, Jr.*, for the petitioner.
*Roger A. Pott*, for the respondent.

### OPINION

TIETJENS, *Judge:* The Commissioner determined deficiencies in income taxes of petitioner as follows:

| Taxable year | Deficiency |
| --- | --- |
| 1963 | $4,102.58 |
| 1964 | 5,523.00 |
| 1965 | 7,025.74 |

The facts have been fully stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

The question for decision is whether amounts received by the petitioner from the grant of certain patent rights were properly reported as capital gains.

Vincent B. Rodgers (hereinafter referred to as petitioner) resided in Turlock, Calif., at the time he filed his petition herein. He filed Federal individual income tax returns for 1963, 1964, and 1965 with the district director of internal revenue, San Francisco, Calif.

Petitioner holds the following U.S. patents on varieties of almonds:

| Patent number | Date of issuance | Variety of almond |
| --- | --- | --- |
| 2330 | December 1963 | Cressey. |
| 1730 | July 1958 | Merced. |
| 1568 | February 1957 | Ballico. |

On April 1, 1963, in exchange for royalties, petitioner granted Burchell Nursery the exclusive right to grow, propagate, use, and sell the Merced almond in California for the life of the patent. He reserved the right to prohibit subassignment.

On that same day, petitioner entered into similar agreements with respect to his rights in the Ballico patent; he transferred his rights in the area of California north of the south line of Sacramento County to Fowler Nurseries, and his rights in the remaining area of California to Burchell Nursery.

On January 2, 1964, he entered into a similar agreement with respect to his rights in the Cressey patent, granting his rights in the entire State of California to Burchell Nursery.

Commercial production of almonds in the United States occurs only in California. Outside the United States almonds are commercially grown in the Mediterranean basin countries.

Petitioner received net payments under these agreements of $14,539, $18,717.75, and $27,659.75 in 1963, 1964, and 1965, respectively, which he reported as long-term capital gain from the sales of patents. The Commissioner determined that no amount of these payments is entitled to capital gains treatment under section 1235, I.R.C. 1954, because petitioner did not, by any of the above grants, transfer property consisting of all substantial rights to the subject patents.

Section 1235(a) of the Internal Revenue Code of 1954 [1] provides:

(a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

The dispute in this case focuses upon the requirement of a transfer of property consisting of all substantial rights to a patent. This requirement recognizes the basic criteria of a "sale or exchange" as developed in the case law under section 117 of the 1939 Code. Those criteria were employed by the courts to distinguish between a "sale" of patent rights and the mere "license" of such rights. The criteria relate to the quantity of rights transferred in the subject property. The adjudicated cases under section 117 of the 1939 Code have not construed that section as containing any such requirement as insisted on by the Commissioner in this case—see below. Rather, the cases decided that

---

[1] All statutory references are to the Internal Reevnue Code of 1954 unless otherwise specified.

separate bundles of rights in the same patent might constitute separate properties each of which might be the subject of a "sale" with the proceeds taxed as capital gain. *Dairy Queen of Oklahoma* v. *Commissioner*, 250 F. 2d 503 (C.A. 10, 1957), reversing on other grounds and remanding 26 T.C. 61; *Merck & Co.* v. *Smith*, 261 F. 2d 162 (C.A. 3, 1958); *United States* v. *Carruthers*, 219 F. 2d 21 (C.A. 9, 1955). This Court decided, under section 117 of the 1939 Code, that the exclusive right to manufacture, use, and sell a patented article, limited to a geographical area within the United States, constitutes a capital asset, the proceeds from the sale of which are taxable as capital gain. *Vincent A. Marco*, 25 T.C. 544 (1955).

The Commissioner contends that *Vincent A. Marco, supra*, decided under section 117 of the 1939 Code, is without continuing validity under section 1235. He relies upon paragraph (b)(1) of section 1.1235–2 of the Income Tax Regulations as amended on October 5, 1965, and which reads in part as follows:

The term "all substantial rights to a patent" does not include a grant of rights to a patent—

(i) Which is limited geographically within the country of issuance;

The regulation, he argues, has support in the legislative history of section 1235 found in S. Rept. No. 1622, 83d Cong., 2d Sess. (1954).[2]

---

[2] *Section 1235. Sale or exchange of patents*

This section is an extensive revision of section 1235 of the House bill. It has no counterpart under existing law.

Subsection (a) provides that a transfer (other than by gift, inheritance or devise) of property consisting of all substantial rights evidenced by a patent, or consisting of an undivided interest therein, by certain holders shall be deemed the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are payable periodically over a period generally coterminous with the transferee's use of the patent or are contingent on the productivity, use, or disposition of the property transferred. The section does not apply to a property right in an invention differing from the monopoly rights evidenced by a patent. However, since the inventor possesses an exclusive inchoate right to obtain a patent, he may transfer his interest, whatever it may be, in any subsequently issued patent before its issuance and before as well as after he has made application for such patent. By "undivided interest" a part of each property right represented by the patent (constituting a fractional share of the whole patent) is meant (and not, for example, a lesser interest such as a right to income, or a license limited geographically, or a license which conveys some, but not all, of the claims or uses covered by the patent). Payments which come within the scope of the section include, but are not limited to, amounts which are payable over a period generally coterminous with the transferee's use of the patent, or amounts which are measured by a fixed percentage of the selling price of the patent article, or are based on units manufactured or sold, or any other method measured by profits, production sale, or use.

Under present law, an express assignment of patent rights by the owner, or an exclusive license of the right to manufacture, use, and sell, the invention thereunder for the life of the patent, can qualify as a "sale or exchange" for tax purposes; thus, the holder can obtain capital-gains treatment on such a transfer if he falls within the "amateur" category. Many court decisions have arrived at this result, not only where the manner of payment has been a lump sum, but also where the purchase price has been conditioned on the use or profitability of the invention, i.e., where it takes the form of "royalty" payments. (See, e.g., *Kronner* v. *United States*, 110 F. Supp. 730 (Ct. Cls. 1953); *Commissioner* v. *Celanese Corp.*, 140 F. (2d) 339 (C.A. of D.C. 1944); *Commissioner* v. *Hopkinson*, 126 F. (2d) 406

Whether this regulation is consonant with the intent of Congress when it enacted section 1235 is a question to which we have given most thoughtful consideration. We have concluded the regulation, insofar as it does not include a grant which is limited geographically within the country of issuance, does not correctly interpret the statute; therefore we do not follow it.

By "rights to a patent" we think Congress was referring to the rights to "make, use and sell" the patented invention. *United States* v. *Carruthers, supra; Waterman* v. *MacKenzie*, 138 U.S. 252 (1891). We think section 1235 requires merely the transfer of "property" and that the rights in such property to make, use, and sell the patented invention be conveyed to the transferee. We read therein no prohibition on the division of a patent into different fields of application or into different geographical areas so long as all substantial rights to the patent so divided are granted.

In *William S. Rouverol*, 42 T.C. 186 (1964), this Court squarely held, under the provisions of section 1235(a), that a patent or patent

---

(C.C.A. 2d 1942) ; *Edward C. Myers*, 6 T.C. 258 (1946), Non. Acq. 1950–1 CB 7.) However, in 1950 the prospect of continued litigation was engendered in this area by the issuance of Mimeograph 6490 (1950–1 CB 9), in which the Commisioner of Internal Revenue announced that he would thereafter regard such assignments or licenses as "providing for the payment of royalties taxable as ordinary income" if payment is measured by the production, sale, or use of the property transferred or if it is payable periodically over a period generally coterminous with the transferee's use of the patent. To obviate the uncertainty caused by this mimeograph and to provide an incentive to inventors to contribute to the welfare of the Nation, your committee intends, in subsection (a), to give statutory assurance to certain patent holders that the sale of a patent (whether as an "assignment" or "exclusive license") shall not be deemed not to constitute a "sale or exchange" for tax purposes solely on account of the mode of payment.

The section does not detail precisely what constitutes the formal components of a sale or exchange of patent rights beyond requiring that all substantial rights evidenced by the patent (other than the right to such periodic or contingent payments) should be transferred to the transferee for consideration. This requirement recognizes the basic criteria of a "sale or exchange" under existing law, with the exception noted relating to contingent payments, which exception is justified in the patent area for "holders" as herein defined. To illustrate, exclusive licenses to manufacture, use, and sell for the life of the patent, are considered to be "sales or exchanges" because, in substantive effect, all "right, title, and interest" in the patent property is transferred (irrespective of the location of legal title or other formalities of language contained in the license agreement). Moreover, the courts have recognized that an exclusive license agreement in some instances may constitute a sale for tax purposes even where the right to "use" the invention has not been conveyed to the licensee, if it is shown that such failure did not represent the retention of a substantial right under the patent by the licensor. It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee, rather than recognizing less relevant verbal touchstones. The word "title" is not employed because the retention of bare legal title in a transaction involving an exclusive license may not represent the retention of a substantial right in the patent property by the transferor. Furthermore, retention by the transferor of rights in the property which are not of the nature of rights evidenced by the patent and which are not inconsistent with the passage of ownership, such as a security interest (e.g., a vendor's lien) or a reservation in the nature of a condition subsequent (e.g., a forfeiture on account of nonperformance) are not to be considered as such a retention as will defeat the applicability of this section. On the other hand, a transfer terminable at will by the transferor would not qualify.

application may be separated into different fields of application, and that each field can be transferred to a different transferee with the transfer being considered under section 1235(a) as a sale or exchange of a capital asset. We held, in other words, that such was "a transfer of property consisting of all substantial rights to a patent." We emphasized that the taxpayer in that case "transferred to each transferee the exclusive right and license to *make, use*, and *sell* throughout a specified territory all of the rights within a given field." (p. 192.)

Paragraph (b)(1) of section 1.1235–2 of the regulations was amended on October 5, 1965, by T.D. 6852. This interpretative regulation was contrary to the decided case law when it was issued. As the Commissioner states, on brief, after "the courts had begun applying non-Section 1235 precedents, where different standards were employed, to decide Section 1235 cases," the regulations were strengthened to set forth clearly his "position" that fragmentized transfers of a patent may not qualify for capital gains treatment under section 1235. We have given the question new consideration and we reaffirm our holding in *William S. Rouverol, supra*, and the cases cited therein.[3]

By its use of the phrase "property consisting of all substantial rights to a patent," we do not think Congress intended to import into section 1235 any further or different impediments to capital gains treatment than were contained in section 117 of the 1939 Code. The legislative history bears no witness to such a substantial change. We follow the line of Tax Court cases culminating in *Vincent A. Marco, supra*, and *William S. Rouverol, supra*.

Petitioner in this case, by each of the separate grants, transferred the exclusive right to grow, propagate, use, and sell the subject variety of almond within a broad geographical area. Each grant constitutes a "transfer of property consisting of all substantial rights to a patent." We hold the full amount of the proceeds under these grants are entitled to be taxed at the preferential capital gains rate.

In reaching this result, we have rejected the Commissioner's argument that the right which petitioner retained to prohibit subassignment represented a substantial right to a patent. Petitioner's retention of this right in no way interfered with or derogated from his grants of property consisting of all substantial rights to the subject patents. Compare *Joe L. Schmitt, Jr.*, 30 T.C. 322 (1958), involving limitations upon the rights assigned to a territorial franchise holder that were so

---

[3] See *Arthur M. Young*, 29 T.C. 850, affd. 269 F. 2d 89, cited in *Rouverol*, decided under sec. 117(q), I.R.C. 1939, which contained language identical to sec. 1235, I.R.C. 1954, "property consisting of all substantial rights to a patent" where, although deciding against the taxpayer on the facts, we said at p. 858: "A sale or assignment of such rights can be effected by the conveyance of either * * * or, third, the exclusive right under the patent *within and throughout a specific part of the United States.*" (Emphasis supplied.)

substantial as to be inconsistent with the taxpayer's position that he had disposed of all substantial rights within each territorial area.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

HOYT and SIMPSON, *JJ.*, dissent.