Albert A. Mros and Doris Mros v. Commissioner.
Mros v. Commissioner
Docket No. 2850-70.
United States Tax Court
T.C. Memo 1971-123; 1971 Tax Ct. Memo LEXIS 210; 30 T.C.M. (CCH) 519; T.C.M. (RIA) 71123; May 27, 1971, Filed. Albert A. Mros, pro se, 1640 No. 22nd Pl. , Phoenix, Ariz.Nicholas G. Stucky, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the calendar year 1966 in the amounts of $707.01 and $35.35, respectively. Because of concessions by the parties, only two issues remain for our determination: (1) Whether a patent transfer containing a field-of-use restriction constitutes a transfer of all substantial rights to the patent *211 within the meaning of section 1235; [1] and (2) whether petitioners are liable for an addition to their taxes pursuant to section 6653(a). Some of the facts have been stipulated and are found accordingly. Findings of Fact Petitioners are husband and wife and had their legal residence in Phoenix, Arizona, at the time of the filing of the petition herein. For the calendar year 1966, they filed a joint return with the district director of internal revenue, Phoenix, Arizona. Doris Mros is a party to this proceeding only by reason of having joined in the return. All references herein to "petitioner" shall be deemed to refer to Albert Mros. Petitioner invented and obtained United States and Canadian patents on a "Combined Gear Reduction and Clutch Mechanism." The gear reduction device involved a new method of producing internal and mating external involute form gears with less tooth differential than conventional gearing but produced by conventional means. The basic advantage of petitioner's gear reduction device was that it had a much higher reduction ratio and a greater loadcarrying *212 capacity than other types of gear reduction mechanisms of comparable size. The invention had potential applicability to virtually any machine or piece of equipment that might require some kind of gear reduction. In 1966, petitioner entered into an agreement with Serka Industries, Inc. (hereinafter Serka), whereby Serka was granted - the sole and exclusive right, license, and privilege under the Mros Patent Rights to manufacture, use and sell and to sublicense others their right to manufacture and sell any invention within the Field of Agreement. The "Field of Agreement" referred to was limited to - hoists, winches, boat accessory devices and air motor power drives, and methods and processes for manufacture or use thereof. Under this agreement, Serka agreed to pay petitioner advance royalties of $1,000 upon the execution of the agreement and $100 per week for the full term of the patents. These advance royalties were to be credited against earned royalties, which were to be computed on the basis of 5 percent of the net selling price of each item made and sold by Serka which embodied any invention covered by the patents. In 1966, petitioner received advance royalty payments *213 of $4,500 from Serka. This amount was not reported in any manner on petitioners' 1966 return. Subsequent to concluding the 1966 agreement with Serka, petitioner endeavored to interest other parties in utilizing the patents in fields other than those to which Serka had exclusive rights. These negotiations were unproductive. In 1970, petitioner and Serka renegotiated the 1966 contract, whereby, in exchange for increased consideration payable to petitioner, Serka's rights were extended to all possible 520 applications of the patents except that petitioner retained the right to manufacture and sell non-commercial quantities of toys and amusement devices embodying rights under the patents. Opinion The principal issue before us is whether the 1966 agreement, whereby Serka acquired from petitioner the exclusive right to "manufacture, use and sell" petitioner's inventions in the fields of "hoists, winches, boat accessory devices and air motor power drives," constituted a transfer, under section 1235, of "property consisting of all substantial rights to a patent" so as to entitle petitioner to capital gain treatment of the payments received from Serka in that year. Respondent's *214 sole contention is that the transfer does not comply with the provisions of his regulations, which exclude from the benefits of section 1235 a grant of rights "in fields of use within trades or industries, which are less than all the rights covered by the patents, which exist and have value at the time of the grant." See section 1.1235-2 (b)(1)(iii). Consequently, respondent argues that the payments in question are royalties, taxable as ordinary income under section 61(a)(6). Although section 1235 was enacted in 1954, respondent's regulation dealing with field-of-use restrictions was not promulgated until October 5, 1965. See T.D. 6852, 1965-2 C.B. 289. In the intervening period, the courts had, on several occasions, sustained the applicability of section 1235 (and its companion provision contained in section 117(q) of the Internal Revenue Code of 1939 applicable to taxable years beginning after May 31, 1950) to a transfer of exclusive rights to an invention within a geographic area or with respect to an industry or functional use which was less extensive than that covered by the patent. Bannister v. United States, 262 F. 2d 175 (C. *215 A. 5, 1958); Flanders v. United States, 172 F. Supp. 935 (N.D. Cal. 1959); William S. Rouverol, 42 T.C. 186 (1964); Estate of Milton P. Laurent, Sr., 34 T.C. 385 (1960). Such action was in accord with the reasoning of other cases decreeing capital gain treatment for restricted field-of-use transfers falling outside the confines of those sections. Merck & Co. v. Smith, 261 F. 2d 162 (C.A. 3, 1958); United States v. Carruthers, 219 F. 2d 21 (C.A. 9, 1955); First National Bank of Princeton v. United States, 136 F. Supp. 818 (D.N.J. 1955); Lamar v. Granger, 99 F. Supp. 17 (W.D. Pa. 1951). See E. I. duPont de Nemours and Company v. United States, 432 F. 2d 1052 (C.A. 3, 1970); Bell Intercontinental Corporation v. United States, 381 F. 2d 1004, 1013-1016 (Ct. Cl. 1967). Contra, Redler Conveyor Company v. Commissioner, 303 F. 2d 567 (C.A. 1, 1962); American Chemical Paint Company v. Smith, 131 F. Supp. 734 (E. D. Pa. 1955). It was against the foregoing background that we confronted the effect of respondent's regulation in Vincent B. Rodgers, 51 T.C. 927 (1969). *216 In that case, we held the regulation invalid and repeated our acceptance of the legal principle that a grant of the exclusive right to a patented invention in a particular geographic area or field of use could qualify as a transfer of "all substantial rights" under section 1235. We reaffirmed this position in Thomas L. Fawick, 52 T.C. 104 (1969), reversed 436 F. 2d 655 (C.A. 6, 1971). See also Donald C. Mac-Donald, 55 T.C. 840 (1971). In its reversal of Fawick, the Sixth Circuit concluded that literal wording of the phrase "all substantial rights to a patent," contained in section 1235, required the transfer of rights to the whole patent in order to qualify for capital gain treatment. In the final analysis, our decision herein turns upon whether we should accede to respondent's plea that we follow the Sixth Circuit and sustain his regulation, thereby abandoning the position we espoused in Fawick. We have given careful consideration to respondent's plea but, although the opinion of that learned court is not without persuasive quality, we must respectfully decline to accept it as controlling. We think it cannot stand against the substantial authorities *217 to the contrary. Despite the fact that it is possible to find various distinguishing nuances in those authorities (and we might add also in those cases which seem to accord with the views of the Sixth Circuit) and that there is some legislative history to support a narrow interpretation of the phrase "all substantial rights 521 to a patent," [2] we continue to be of the opinion that respondent's regulation does not accord with the controlling judicial analysis. The second issue before us involves the liability for addition to tax under section 6653(a) because the underpayment herein was due to "negligence or intentional disregard of rules and regulations." The burden of proof is upon the taxpayer to show that he was not negligent. Robert L. Bunnel, 50 T.C. 837 (1968). *218 Petitioners herein offered no satisfactory explanation for their complete failure to report on their 1966 return the amounts received from Serka. Therefore, the addition to the tax must be sustained. Decision will be entered under Rule 50. Footnotes
1. Except as otherwise specified, all references are to the Internal Revenue Code of 1954, as amended.↩
2. In dealing with the transfer of an undivided interest, under section 1235, the Senate Committee report indicates that a limited geographic transfer or a transfer "which conveys some, but not all of the claims or uses covered by the patent" is to be excluded. See S. Rept. No. 1622, 83rd Cong., 2d Sess., p. 439 (1954). But compare 35 U.S.C. sec. 261; Donald C. Mac-Donald, 55 T.C. 840, 858↩, n. 2 (1971).