DON AND IRENE KUENEMAN, JOHN R. KUENEMAN, AND EDMUND W. AND ELLA M. HARRELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9858–74. Filed July 26, 1977.

*Joseph L. Strabala,* for the petitioners.
*James H. Ross, Jr.,* for the respondent.

### OPINION

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income taxes:

|  | Deficiencies | |
| --- | --- | --- |
| Petitioners | 1971 | 1972 |
| Don and Irene Kueneman | $1,933 | $1,898 |
| John R. Kueneman | 2,344 | 1,911 |
| Edmund W. and Ella M. Harrell | 287 | 290 |

As a result of a concession by the Commissioner, the sole issue for decision is whether the petitioners are entitled to report as long-term capital gains royalty payments received from an exclusive transfer of patent rights within a specified geographical area. That issue turns on whether such a transfer disposed of "all substantial rights" to the patents within the

meaning of section 1235(a) of the Internal Revenue Code of 1954.[1]

All of the facts have been stipulated, and those facts are so found.

All of the petitioners—Don and Irene Kueneman (husband and wife), John R. Kueneman, and Edmund W. and Ella M. Harrell (husband and wife)—resided in Oakland, Calif., when they timely filed the petition herein. For the years 1971 and 1972, Mr. and Mrs. Kueneman and Mr. and Mrs. Harrell filed joint Federal income tax returns, and John R. Kueneman filed individual Federal income tax returns. All such returns were filed with the District Director of Internal Revenue, Fresno, Calif.

The petitioners Don Kueneman and John R. Kueneman were the principal inventors of a type of rock-crushing machine for which they obtained patents (the patents) in the 1940's. By agreement dated August 27, 1946, the ownership of such patents was altered so that John R. Kueneman, Don Kueneman, Alma B. Harrell, and Cyril P. Kenville each acquired a specified undivided ownership interest in them. In addition, the agreement provided that John R. Kueneman was authorized to act on behalf of all the owners of the patents in connection with any sale, lease, or other arrangement affecting the patents.

On November 1, 1948, John R. Kueneman entered into a licensing agreement with Pennsylvania Crusher Co. (Crusher), a New York corporation. Under the licensing agreement, Crusher was granted the exclusive right to make, vend, and use the patents throughout Puerto Rico, eastern Canada, and all of the United States east of North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, and Texas during the lives of such patents. In return for the transfer, Crusher agreed to make specified royalty payments to the undivided owners in accordance with their ownership interests in the patents, as set forth in the licensing agreement.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.

During the years in issue, the petitioners received the following payments from the exclusive geographical patent rights granted to Crusher:

| Petitioners | Royalty payments | |
| | 1971 | 1972 |
| --- | --- | --- |
| John R. Kueneman | $7,814 | $7,910 |
| Don and Irene Kueneman | 7,814 | 7,910 |
| Edmund W. and Ella M. Harrell | 2,293 | 2,322 |

On their Federal income tax returns for the years in issue, the petitioners treated such royalties as long-term capital gains. In his deficiency notices, the Commissioner determined that such royalty income was ordinary income.

We must decide whether the petitioners are entitled to report the income received from their patent transfers as long-term capital gains or whether it is ordinary income. The petitioners contend they are entitled to capital gain treatment under section 1235 and make no argument for capital gain treatment outside such provision. They argue that their exclusive geographical transfers disposed of "all substantial rights" in such patents within the meaning of section 1235(a).[2] In two prior decisions, *Rodgers v. Commissioner*, 51 T.C. 927 (1969), and *Estate of Klein v. Commissioner*, 61 T.C. 332 (1973), revd. 507 F.2d 617 (7th Cir. 1974), cert. denied 421 U.S. 991 (1975), this Court held that such a transfer automatically meets that statutory requirement and qualifies for capital gain treatment. In so holding, we overturned a Treasury regulation to the contrary.[3] The action of the Seventh Circuit

---

[2] (a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

[3] Sec. 1.1235–2(b)(1), Income Tax Regs.:

* * * (1) The term "all substantial rights to a patent" means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term "all substantial rights to a patent" does not include a grant of rights to a patent—

(i) Which is limited geographically within the country of issuance;

* * *

The circumstances of the whole transaction, rather than the particular terminology

in reversing our decision in *Estate of Klein* clearly calls for a reconsideration of our position with respect to geographically limited transfers of patent rights. Moreover, the rationale on which we relied in the *Rodgers* and *Estate of Klein* cases has been rejected by the Ninth and Sixth Circuits. *Mros v. Commissioner*, 493 F.2d 813 (9th Cir. 1974), revg. per curiam a Memorandum Opinion of this Court;[4] *Fawick v. Commissioner*, 436 F.2d 655 (6th Cir. 1971), revg. 52 T.C. 104 (1969). In view of such general criticism of our position, we have carefully reexamined the basis for our decision in *Rodgers*.

Prior to the enactment of section 1235, there was no specific statutory provision prescribing the tax consequences resulting from a transfer of patent rights; instead, taxpayers seeking capital gains for the proceeds of such transfers had to meet the general requirements relating to capital gains contained in section 117 of the Internal Revenue Code of 1939. Thus, it was necessary for a taxpayer to show that the patent rights transferred by him were in his hands a "capital asset"[5] and that he disposed of them in a transaction that qualified as a "sale or exchange."[6] In understanding the approach we took

---

used in the instrument of transfer, shall be considered in determining whether or not all substantial rights to a patent are transferred in a transaction.

[4] In *Mros v. Commissioner*, 493 F.2d 813 (1974), the Ninth Circuit rejected our position that a transfer of patent rights within a field of use automatically qualifies as a disposition of "all substantial rights" to a patent within the meaning of sec. 1235. See *Rouverol v. Commissioner*, 42 T.C. 186 (1964); *Fawick v. Commissioner*, 52 T.C. 104 (1969), revd. 436 F.2d 655 (6th Cir. 1971). However, since the case before us involves an exclusive geographical patent transfer, a distinct and separate legal question as the Commissioner recognizes, our decision is not governed by *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

[5] This issue presented the question of whether any of the exclusions to the definition of capital asset applied. The exclusion most often in issue was whether the patent constituted property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Sec. 117(a)(1), I.R.C. 1939; sec. 1221(1). That question turned on whether the taxpayer was a professional or amateur inventor. See, e.g., *Hofferbert v. Briggs*, 178 F.2d 743, 745 (4th Cir. 1949); *Lobello v. Dunlap*, 210 F.2d 465 (5th Cir. 1954); *Dreymann v. Commissioner*, 11 T.C. 153, 162 (1948); *Myers v. Commissioner*, 6 T.C. 258, 266 (1946); *Avery v. Commissioner*, 47 B.T.A. 538, 541–542 (1942); *Lamar v. Granger*, 99 F.Supp. 17, 41–42 (W.D. Pa. 1951). Sec. 1235 did away with this requirement so that professional inventors became eligible to receive capital gains upon the "sale or exchange" of their patents. S. Rept. 1622, 83d Cong., 2d Sess. 439 (1954).

[6] See *Kronner v. United States*, 110 F.Supp. 730, 731 (Ct. Cl. 1953); *Reid v. Commissioner*, 26 T.C. 622, 631 (1956); *Lamar v. Granger*, 99 F.Supp. 17, 41 (W.D. Pa. 1951).

in *Rodgers,* it is helpful to discuss the rationale by which exclusive geographical transfers had qualified as a "sale."

Originally, when the courts were confronted with the necessity of deciding when a transfer of patent rights constituted a "sale" for tax purposes, they turned to Federal patent law for guidance as to the recognized and divisible property interests in a patent. If a patent transfer represented under patent law a disposition of an identifiable and distinct piece of property, then a "sale" could be found; otherwise, the transfer did not amount to a "sale." The patent law already recognized such a distinction with respect to the transfer of patent rights by use of the concepts of "assignment" and "license." For patent law purposes, certain legal consequences flowed from whether one achieved the status of an assignee or was merely a licensee. The classic exposition of the distinction between such concepts appears in the Supreme Court's opinion in *Waterman v. MacKenzie,* 138 U.S. 252, 255 (1891), wherein it was said:

> Every patent issued under the laws of the United States for an invention or discovery contains "a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States and the Territories thereof." Rev. Stat. §4884. The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. Rev. Stat. §4898. A transfer of either of these three kinds of interests is an *assignment,* properly speaking, and *vests in the assignee a title in so much of the patent itself,* with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. *Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent,* and no right to sue at law in his own name for an infringement. Rev. Stat. §4919; *Gayler* v. *Wilder,* 10 How. 477, 494, 495; *Moore* v. *Marsh,* 7 Wall. 515. * * * Any rights of the licensee must be enforced through or in the name of the owner of the patent * * * [Emphasis supplied.]

In accordance with the *Waterman* definition of an assignment of patent rights, it was held that, for tax purposes, a "sale" of patent rights occurred upon the transfer of: (1) The

whole patent,[7] (2) an undivided interest in the whole patent,[8] or (3) the exclusive right to the patent within a specific geographical area.[9] Thus, exclusive geographical transfers automatically qualified as a "sale" because of *Waterman.*

In *Rodgers v. Commissioner,* 51 T.C. 927 (1969), this Court first had occasion to pass upon the effect of the enactment of section 1235 on an exclusive transfer of patent rights within a geographical area. In that case, the taxpayer was the holder of patents on three varieties of almonds. He made several transfers which together granted all of his rights to such patents within the State of California. California was the only State in which there was commercial production of almonds. We observed that section 1235 did not impose "any further or different impediments to capital gains treatment than were contained in section 117 of the 1939 Code" (51 T.C. at 931); and consequently, we concluded that such exclusive geographical patent transfers were to continue to be treated as a "sale," thereby automatically qualifying for capital gain treatment. In support of such conclusion, the Court offered the following rationale for interpreting the all-substantial-rights test:

We read * * * [in sec. 1235] no prohibition on the division of a patent into different fields of application or into different geographical areas so long as all substantial rights to the patent *so divided* are granted. [51 T.C. at 930; emphasis supplied.]

*Rodgers* was not appealed by the Government, perhaps because the transfers of all patent rights in California, in fact, disposed of all rights of any value. However, the rationale of *Rodgers* has generally been disapproved by other courts. The

---

[7] *Watson v. United States,* 222 F.2d 689, 690–691 (10th Cir. 1955); *Commissioner v. Hopkinson,* 126 F.2d 406, 410 (2d Cir. 1942), affg. 42 B.T.A. 580 (1940); *Kronner v. United States,* 110 F.Supp. 730, 735 (Ct. Cl. 1953); *Myers v. Commissioner,* 6 T.C. 258, 263 (1946); *Taylor v. Commissioner,* 16 T.C. 376, 384 (1951); *Ruge v. Commissioner,* 26 T.C. 138, 141 (1956); *Reid v. Commissioner,* 26 T.C. 622, 632–633 (1956); see *Lamar v. Granger,* 99 F.Supp. 17, 36–37 (W.D. Pa. 1951); cf. *Commissioner v. Celanese Corp.,* 140 F.2d 339, 341–342 (D.C. Cir. 1944), affg. a Memorandum Opinion of this Court.

[8] *Dreymann v. Commissioner,* 11 T.C. 153, 159–160 (1948); *Parke, Davis & Co. v. Commissioner,* 31 B.T.A. 427, 430–431 (1934); *Lamar v. Granger,* 99 F.Supp. 17, 36–37 (W.D. Pa. 1951).

[9] *Marco v. Commissioner,* 25 T.C. 544 (1955); see *Watson v. United States,* 222 F.2d 689, 690 (10th Cir. 1955); *Reid v. Commissioner,* 26 T.C. 622, 632 (1956); cf. *Kimble Glass Co. v. Commissioner,* 9 T.C. 183 (1947).

issue next arose in *Estate of Klein v. Commissioner*, 61 T.C. 332 (1973), in which the owner of a patented process for the production of organic compost granted an exclusive right to manufacture, use, and sell the compost in certain Eastern States of the United States. We followed our decision in *Rodgers* and held that such a transfer of patent rights automatically qualified for capital gain treatment under section 1235. On appeal, our decision was reversed by the Seventh Circuit (507 F.2d 617 (1974)). That court reviewed the circumstances surrounding the enactment of section 1235 and found that one of its purposes was to allow capital gain treatment even though the owner of the patent was compensated by royalties which were contingent or periodic. The court went on to say:

> Section 1235(a) went further, however, to provide, as we have seen, that the transfer of patent rights shall be considered a sale or exchange of a capital asset only if "all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights" are included in the transfer. In Rodgers v. Commissioner, 1969, 51 T.C. 927, the Tax Court took the view that this language of §1235 was not intended to exclude from capital gains treatment a transfer of patent rights limited geographically, and it followed and applied that decision in the present case. We cannot agree with this conclusion.
>
> * * * we think that the statutory requirement that the "substantial rights" transferred shall be "all" of them, even in the case of the transfer of an undivided interest in them, indicates a Congressional intention that the transfer of a part of the patent rights, divided off from the rest by a limitation on their use or the geographical area of their exercise, shall not be deemed a sale or exchange of a capital asset. * * * [507 F.2d at 620–621.]

In *Fawick v. Commissioner*, 52 T.C. 104 (1969), we were faced with the question of whether a transfer of the exclusive rights to a patent limited to a field of use qualified for capital gain treatment under section 1235. We embraced the *Rodgers'* statement that patent rights can be subdivided before applying the all-substantial-rights test and held that an exclusive transfer of patent rights within a field of use qualified for capital gain treatment under section 1235 irrespective of the value of the retained rights. Cf. *Redler Conveyor Co. v. Commissioner*, 303 F.2d 567, 569 (1st Cir. 1962), affg. a Memorandum Opinion of this Court.

Our decision in *Fawick* was appealed to the Sixth Circuit, and after an extensive review of the authorities and legislative history of section 1235, that court also reversed our

holding (436 F.2d 655 (1971)). After reviewing the event leading to the enactment of section 1235, the court said with respect to the reasons for the enactment of the section:

From this review of the germination of §1235, we conclude that the section was intended to assure inventors that their license royalties would be afforded capital gain treatment "regardless of whether or not payments in consideration of such transfer are—

"(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(2) contingent on the productivity, use, or disposition of the property transferred."

* * * The "incentive to inventors to contribute to the welfare of the Nation" resulted when capital gain treatment was provided under §1235 for "professional" as well as "amateur" inventors otherwise qualifying under the statute. Thus, the two-fold purpose of the section * * * does not point to the interpretation * * * that the section was designed to permit capital gain treatment of income from transfers having a field-of-use restriction. [436 F.2d at 661.]

After reviewing the legislative history, the court suggested:

it is our opinion that a two prong inquiry is necessary to determine if a transaction qualifies for special treatment under §1235. The initial inquiry for determining whether or not there has been a transfer by the holder of "property consisting of all substantial rights to a patent" requires consideration of what the holder has left after the transfer. If he retains any substantial rights to the patent, then he has not transferred the property that comprises all those rights.

If the taxpayer can show that he has no substantial rights in the patent after the transfer, as a second inquiry we must look at what he actually relinquished to the transferee. * * * [436 F.2d at 662.]

In conclusion, the court stated:

we conclude that Waterman v. Mackenzie, * * * relied upon by several of the courts in analyzing the issue is not authority for determination of the present issue one way or the other. That case was concerned with whether or not a transfer was of a character that would give the transferee the right to sue and did not involve the tax consequences of the transfer. Section 1235 does not speak in terms of assignments or licenses, but rather, it is concerned with the transfer of all substantial rights to a patent, and whether that transfer falls within the *Waterman* definition of an assignment or not is of no consequence to the operation of the statute. [436 F.2d at 665.]

The issue arose again in connection with a field-of-use limitation in the case of *Mros v. Commissioner*, T. C. Memo. 1971–123. We again followed the rationale of *Rodgers* and

held that the transfer qualified for capital gain treatment under section 1235, but our decision was reversed by the Ninth Circuit (493 F.2d 813 (1974)). That Circuit Court approved of the tests suggested by the Sixth Circuit in *Fawick*, and since it found that the transferor retained valuable rights to the patent after the transfer, it held that the transfer limited to a field of use did not qualify for capital gain treatment under section 1235.

Our own review of section 1235 and the circumstances surrounding its enactment also leads us to the conclusion that we should no longer follow the interpretation suggested by *Rodgers*. As the Courts of Appeals have pointed out, it appears that section 1235 was enacted to extend capital gain treatment to professional inventors and to allow all inventors capital gain treatment upon the "sale" of a patent, even though payment for the patent was to be made by royalties, payable periodically or contingent on the use of the patent. See S. Rept. 1622, 83d Cong., 2d Sess. 438–439 (1954). We can surely assume that the framers of section 1235 were familiar with the *Waterman* decision. Yet, they did not make the availability of capital gain treatment turn on whether there was a "sale" within the meaning of *Waterman;* instead, they elected to make capital gain treatment available in two situations: a transfer of all substantial rights in a patent, or a transfer of an undivided interest therein. The legislative history relating to the all-substantial-rights test clearly shows, as the Courts of Appeals have pointed out, that Congress did not intend for that test to be applied after first slicing up a patent into fields of use or into geographical areas; instead, it was to be applied by examining whether a transfer disposed of all substantial rights of the patent owner:

The section does not detail precisely what constitutes the formal components of a sale or exchange of patent rights beyond requiring that all substantial rights evidenced by the patent (other than the right to such periodic or contingent payments) should be transferred to the transferee for consideration. * * * *It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee,* rather than recognizing less relevant verbal touchstones. * * * [S. Rept. 1622, *supra* at 439–440; emphasis supplied.]

Also, the adoption of the *Rodgers* interpretation would lead to results which are capricious or clearly inconsistent with the legislative history. If the patent can be sliced into smaller segments, and the all-substantial-rights test satisfied merely by transferring all substantial rights with respect to that segment, capital gain treatment would be allowed, even though the patent holder retains very substantial rights to the patent. On the other hand, if the patent rights are not sliced in any manner, the patent holder could obtain capital gain only by transferring all substantial rights with respect to the whole patent. Moreover, although section 1235 allows capital gain treatment for the transfer of an undivided interest in all substantial rights to the patent, the adoption of the *Rodgers* interpretation would allow capital gain treatment when there is a transfer of an undivided interest in a field of use or an exclusive geographical area, but the legislative history explicitly indicates that no such restrictive transfer was intended to qualify under that test:

By "undivided interest" a part of each property right represented by the patent (constituting a fractional share of the whole patent) is meant (and not, for example, a lesser interest such as a right to income, or a license limited geographically, or a license which conveys some, but not all, of the claims or uses covered by the patent). * * * [S. Rept. 1622, *supra* at 439.]

See also H. Rept. 1337, 83d Cong., 2d Sess. A279 (1954).

In addition, in asserting that section 1235 made no change in the test of qualification, the Court in *Rodgers* overlooked the fact that the tests for qualification were in fact changed. The *Waterman* test of a "sale," by which exclusive geographical transfers had been approved, was not carried forward into section 1235. Under the all-substantial-rights test which was adopted by section 1235, an exclusive geographical transfer could not automatically qualify. Whether such a transfer could qualify under the all-substantial-rights test required a detailed factual examination and evaluation of the nature and quantity of the patent rights transferred and retained.[10] Although the Court in *Rodgers* purported to apply the all-

---

[10] In making such statement, we are not passing upon how the rule is to be applied when there is a series of transfers. For example, in *Blake v. Commissioner*, 67 T.C. 7 (1976), we recently held that the all-substantial-rights test can be satisfied by a final transfer in a sequence of field-of-use transfers; and nothing said herein is meant to question that application of the general rule.

substantial-rights test, it made no such factual inquiry, and cited as legal authority for its conclusion *Marco v. Commissioner,* 25 T.C. 544 (1955), a case decided under the *Waterman* sale test. We are now convinced that an exclusive geographical patent transfer does not automatically dispose of all substantial rights in a patent, and we conclude that section 1235 cannot properly be applied without a factual inquiry into the value of the rights transferred and retained. Accordingly, we will no longer follow *Rodgers* and *Estate of Klein* to the extent that they hold to the contrary.

Having so concluded, we now turn to the facts of this case to determine whether there was a transfer of all substantial rights, bearing in mind that the petitioners have the burden of establishing that their disposition satisfied such test. Rule 142(a), Tax Court Rules of Practice and Procedure. The parties have stipulated that the petitioners retained the rights to make, sell, and use the patented rock-crushing machines in the western portion of the United States. Nothing of record would allow us to conclude that such rights were not substantial; the petitioners have not so contended, nor have they offered any evidence to support such a contention.[11] Thus, we must conclude that they have failed to establish that the exclusive geographical transfer to Crusher disposed of "all substantial rights" to their patents.[12]

In light of our conclusion that the petitioners have failed to prove their transfers met the statutory test and the general definition of all substantial rights contained in the Treasury regulations, it is unnecessary for us to pass on the validity of section 1.1235–2(b)(1)(i), Income Tax Regs., which may be read to provide that an exclusive geographical patent transfer can never dispose of all substantial rights.

*Decision will be entered under Rule 155.*
Reviewed by the Court.

---

[11] Whether we would be willing to grant a rehearing because we are now adopting a different legal standard, and whether the petitioners could make the requisite showing if we did, are questions that are not now before us.

[12] Since the petitioners have not argued for capital gain treatment under any provision other than sec. 1235, we do not reach the issue of whether patent holders, such as the petitioners, may seek capital gain treatment outside sec. 1235 when the consideration received for their patent transfer is royalty payments described in sec. 1235(a). Cf. S. Rept. 1622, *supra* at 441; sec. 1.1235–1(b), Income Tax Regs.

TANNENWALD, *J.*, concurring: It seems to me that the rationale of decision under section 1235 should not be different whether the issue be field of use or geographic area of use. Such being the case, although I am not fully satisfied that our prior analysis of the meaning of "substantial rights" is wrong (see *Mros v. Commissioner*, T.C. Memo. 1971–123, revd. 493 F.2d 813 (9th Cir. 1974)), I am now willing to accede to the contrary analysis articulated by three Circuit Courts of Appeals. *Estate of Klein v. Commissioner*, 507 F.2d 617 (7th Cir. 1974), revg. 61 T.C. 332 (1973); *Mros v. Commissioner*, 493 F.2d 813 (9th Cir. 1974), revg. T.C. Memo. 1971–123; *Fawick v. Commissioner*, 436 F.2d 655 (6th Cir. 1971), revg. 52 T.C. 104 (1969). I reach this conclusion independently of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. on another issue 445 F.2d 985 (10th Cir. 1971). See n. 4 of the majority opinion herein.

DRENNEN and STERRETT, *JJ.*, agree with this concurring opinion.