THOMAS L. FAWICK AND MARIE FAWICK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 846–67.    Filed April 21, 1969.

*Edward C. Crouch*, for the petitioners.
*John P. Graham*, for the respondent.

OPINION

It is petitioners' position that the payments by Falk Corp. to Marie Fawick constitute capital gain under the provisions of section 1235, I.R.C. 1954.[1] Petitioner states that the payments by Falk Corp. to Marie Fawick were under the provisions of the original agreement between Falk Corp. and petitioner granting to Falk Corp. an exclusive license to make, to use, and to sell for marine service one-to-one driving clutches embodying the inventions of patent applications Nos. 99,420, 99,421, and 101,638 "or any improvements thereon that may be owned, controlled, or subject to licensing by Fawick." Petitioner points out that an "exclusive license to make, use and sell" has long been considered to constitute a "sale" of a patent. *Vincent A. Marco*, 25 T.C. 544 (1955). Petitioner states that even though the patents issued pursuant to the applications specifically referred to in the agreement had expired, Falk Corp. was using improvements with respect to which a patent was issued to petitioner in 1953 and that because of use of these improvements was required to pay the amounts specified as royalties under the original license agreement and the supplemental agreements. It is petitioner's position that the transfer of the exclusive right to make, to use, and to sell for marine use is a sale or transfer of all rights to the patents and improvements thereon for the specified usage and the transfer falls squarely within the provisions of section 1235 so that had the payments here in issue been made to petitioner they would have been capital gains, citing *Estate of Milton P. Laurent, Sr.*, 34 T.C. 385 (1960). Petitioner says the income having been assigned by gift by petitioner to Marie Fawick, retains its characteristic as capital gain in her hands, citing *Franklin A. Reece*, 24 T.C. 187 (1955), affd. 233 F. 2d 30 (C.A. 1, 1956).

Respondent contends that the facts here show that the payments made to Marie Fawick during the years here in issue were not with respect to Falk Corp.'s exclusive license to manufacture and sell for marine uses but with respect to its nonexclusive license to incorporate the inventions into any complete geared transmission unit of its own manufacture. In the alternative respondent states that section 1235 is inapplicable to the agreement between petitioner and Falk Corp. since the exclusive license was limited to marine use and therefore was

---

[1] All references are to the Internal Revenue Code of 1954. Sec. 1235 provides as follows:

(a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use. or disposition of the property transferred.

not a "transfer" of "all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights * * *." Respondent further contends that even if we hold against his alternative contention, section 1235 should not be considered to be applicable to a "transfer" of an improvement "patent" which was not in existence and for which no application had been prepared or filed at the date the agreement to transfer the basic patent was entered into. Finally, respondent contends with respect to the applicability of section 1235 that the language of the original agreement between Falk Corp. and Fawick is not sufficiently clear as to be properly interpreted as requiring the transfer of improvements for which no applications were pending at the time the agreement was entered into.

Respondent apparently does not contend that the payments by Falk Corp. to Marie Fawick do not constitute capital gains if such payments would constitute capital gains had they been made to petitioner. In any event we consider the law in this respect to be as petitioner contends. See *Franklin A. Reece, supra.*

Also, respondent does still contend that the payments made by Falk Corp. to Marie Fawick were for services rendered by petitioner to Falk Corp. However, the evidence shows this not to be in fact the basis for the payments. Fawick Corp. of which petitioner was president manufactured the rubber components for the Airflex clutches made by Falk Corp. However, the arrangement for such purchases including petitioner's services in connection therewith was separate and apart from the agreement between petitioner and Falk Corp. as to Falk Corp.'s use of petitioner's patents. Fawick Corp. was compensated for the parts it manufactured for Falk Corp. and such payments are not involved in this case.

The evidence in this case shows that during the years here in issue Falk Corp. sold no Airflex clutches in any complete geared power-transmission unit of its own manufacture that was to be used for any purpose other than marine. The evidence shows that all Airflex clutches sold by Falk Corp. during the years here in issue were included in complete geared, power-transmission units for marine use. The evidence shows that Falk Corp. deducted the payments made to petitioner's assignees under its agreement with petitioner as expenses and designated these payments as under "class 3" which was a designation it used for its nonexclusive license to incorporate the Airflex clutch in its complete geared power-transmission units of its own manufacture for other than marine use. Since all the units manufactured during the years here in issue were for marine use, the evidence shows that the payments here in issue were under the exclusive license given by petitioner to Falk Corp. to manufacture for marine use. The

evidence in this case does not support respondent's contention that the payments made by Falk Corp. to petitioner's assignees were in fact payments under the nonexclusive license. We conclude from the evidence that all the payments made by Falk Corp. to petitioner's assignees including Marie Fawick during the years here in issue were under the exclusive license granted by petitioner to Falk Corp. to manufacture for marine uses. The allocation by Falk Corp. on its records of these payments to "class 3" was a mistake on the part of that company.

Since we conclude from the evidence that all the payments made by Falk Corp. to Marie Fawick were with respect to the exclusive license granted by petitioner to Falk Corp. to manufacture Airflex clutches for marine use, it is necessary for us to consider respondent's remaining contentions with respect to the application of section 1235. Respondent contends that "all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights" as used in section 1235 does not include a grant limited to use in a specific field within a trade or industry such as the exclusive license for marine use here involved. Respondent relies on the provisions of section 1.1235–2(b) (1) (iii), Income Tax Regs.,[2] in support of his position. In *William S. Rouverol*, 42 T.C. 186 (1964), we held that under the provisions of section 1235 a patent may be separated by fields of application and that a transfer or assignment to another of only one such field amounted to an assignment or transfer of "property consisting of all substantial rights to a patent" as used in section 1235. In *William S. Rouverol, supra*, which is relied upon by petitioner in this case, we concluded that a transfer to which section 1235 is applicable had taken place when the exclusive right to make, use, and sell in a limited area or in a limited field in the industry had been granted by a contract. At the date of our decision in the *Rouverol* case, respondent's regulations did not contain the provision now contained in section 1.1235–2(b) (1) (iii). However, in *Vincent B. Rodgers*, 51 T.C. 927 (1969), we held that our decision in *William S. Rouverol, supra*, would be followed and that section 1.1235–2(b) (1) of respondent's regulations insofar as contrary to our conclusion in that case was invalid. In accordance with our holding in *Vincent B. Rodgers, supra*, we conclude that respondent's contention that the

---

[2] Sec. 1.1235–2(b) *All substantial rights to a patent.* (1) The term "all substantial rights to a patent" means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term "all substantial rights to a patent" does not include a grant of rights to a patent—

\* \* \* \* \* \* \*

(iii) Which grants rights to the grantee, in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant; or

transfer by petitioner to Falk Corp. of an exclusive license to make, use, and sell the Airflex one-to-one clutch for marine purposes is not within the scope of section 1235 is without merit. We therefore conclude that had the payments here in issue been made while the patents referred to in the agreement of February 23, 1937, were unexpired, such payments would have constituted long-term capital gain under the provisions of section 1235.

Respondent points out that the patents issued under the applications listed in the agreement between petitioner and Falk Corp. made as of February 23, 1937, had all expired by the years here in issue, the last of such patents expiring in 1958. Respondent states that agreements for continuing payments for a patent after its expiration are unenforceable and petitioner does not contest this statement. Both parties agree that the payments made during the years here in issue would not come within the provision of section 1235 if they were made with respect to the expired patents. It is, however, petitioner's contention that the payments were made with respect to a specific improvement patent. Respondent recognizes that it is well established that an agreement to transfer future inventions is a valid contract to assign such inventions. The validity of contracts to assign future inventions has long been recognized. See *Carl G. Dreymann*, 11 T.C. 153 (1948). Respondent argues, however, that even if there were a contract to assign future inventions in the instant case no such assignment was actually made. The ownership of an invention may be assigned prior to the time a patent is issued and even prior to the time that an application for a patent is filed. See *Franklin S. Speicher*, 28 T.C. 938 (1957). In *Heil Co.*, 38 T.C. 989, 1002 (1962), we held that an amount paid "in consideration for the sale or exchange by petitioner to Harvester of capital assets and the right in Harvester upon the coming into existence of like assets in the future to have the ownership thereof promptly and immediately transferred to it by petitioner" constituted capital gain. We recognized in the *Heil Co.* case that the transfer of a patent with a provision for the transfer of improvements thereon was subject to capital gains treatment even though no formal assignment of an improvement had been made. From this holding it logically follows that payments made to an assignor for use by the assignee of an unexpired improvement patent under an agreement which grants to the assignee an exclusive license to make, to use, and to sell an invention covered by the patent, and future improvements thereon, constitute capital gain under section 1235. The fact that the only assignment of the improvement patent is in the original agreement and that the original patent has expired does not cause the payments for use of the improvement patent to be other than capital gain. We therefore conclude that the

payments here in issue constitute capital gain if the contract between petitioner and Falk Corp. entered into as of February 23, 1937, is properly to be interpreted as requiring the transfer by petitioner to Falk Corp. of future improvements on the patents assigned by the agreement.

Respondent contends that it is well established that an agreement to assign a patent and improvements thereon covers only existing improvements unless the language of the contract is plain and the evidence unmistakable that the parties had in mind the assignment by the inventor of future improvements, citing *De Long Corporation* v. *Lucas*, 176 F. Supp. 104, 127 (S.D.N.Y. 1959), affd. 278 F. 2d 804 (C.A. 2, 1960), and *New Britain Machine Co.* v. *Yeo*, 358 F. 2d 397 (C.A. 6, 1966). Both of those cases dealt with situations entirely different from the circumstances of the instant case. In *New Britain Machine Co.* v. *Yeo, supra,* there was no specific agreement to assign improvements with respect to the particular patent involved in the litigation but one of the parties was attempting to have the contract interpreted to imply such an agreement to assign because of provisions of the contract with respect to assignment of improvements on other patented inventions. The *De Long Corporation* case dealt with an employee of De Long Corporation who had become employed by another company. The employee's contract with De Long Corporation prohibited his competing or assisting another in competing with De Long Corporation for a period of 2 years after he ceased to be employed by De Long Corporation. That case concerned questions of patents obtained by the employee after he left the employment of De Long Corporation but prior to the expiration of the 2-year period.

In our view, the language of the agreement of February 23, 1937, is clear that it was contemplated by the parties that the right of Falk Corp. to future improvements by petitioner on the patents assigned to Falk Corp. were covered by that agreement. The words "any improvement thereon that may be owned, controlled, or subject to licenses by" petitioner contemplate improvements to be made in the future. The term, "may be" is reasonably interpreted to include such future improvement. Furthermore, the testimony in this case is that both parties considered the contract to cover future improvements. We therefore conclude that the improvement which was being used by Falk Corp. during the years here in issue and with respect to which the payments here involved were made to Marie Fawick was an invention to which Falk Corp. was granted an exclusive license by the agreement of February 23, 1937. We therefore hold that the payments by Falk Corp. to Marie Fawick during the years here in issue constituted capital gains under section 1235.

It is unnecessary for us to consider the argument of the parties with respect to whether the amounts paid by Falk Corp. to Marie Fawick during the years here in issue would constitute capital gain under section 1221. We hold for petitioner on the only issue litigated herein. However, a recomputation of petitioners' tax liability is necessary because a number of issues have been disposed of by agreement of the parties.

*Decision will be entered under Rule 50.*