Albert A. MROS and Doris Mros, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 72–1512.

United States Court of Appeals, Ninth Circuit.

March 22, 1974.

Carolyn R. Just, Washington, D.C. (argued), Lee H. Henkel, Jr., Acting

14. *See* Watts v. Indiana, 1949, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 96 L.Ed. 1801, 1805.

Chief Counsel, I.R.S., Treasury Dept., Washington, D.C., Scott T. Crampton, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for respondent-appellant.

Robert G. Blanchard, Los Angeles, Cal. (argued), for petitioners-appellees.

Before WRIGHT and TRASK, Circuit Judges, and BYRNE, SR.,* District Judge.

PER CURIAM:

This appeal from the Tax Court of the United States involves disputed federal income taxes for the year 1966. The legal issue presented by this case is whether a transfer of patent rights by taxpayer[1] subject to a field of use restriction was a transfer of "all substantial rights" to a patent within the meaning of Section 1235 of the Internal Revenue Code of 1954, and thus a capital transaction, even though the taxpayer retained rights in his patent property to license to others outside the fields of use already granted.

This case was submitted to the Tax Court on a stipulation of facts, exhibits, and testimony of the taxpayer. The material facts as found by the Tax Court are summarized as follows:

Taxpayer invented and patented a "Combined Gear Reduction and Clutch Mechanism". The gear reduction device had a much higher reduction ratio and a greater load-carrying capacity than other types of gear reduction mechanism of comparable size, and had potential applicability to virtually any equipment that might require some kind of gear reduction.

In 1966, the taxpayer entered into an agreement with Serka Industries, Inc. (hereinafter "Serka"), whereby Serka was granted—

"The sole and exclusive right, license, and privilege under the Mros

Patent Rights to manufacture, use and sell and to sublicense others their right to manufacture and sell any invention within the Field of Agreement." The "Field of Agreement" referred to was limited to—"hoists, winches, boat accessory devices and air motor power drives, and methods and processes for manufacture or use thereof."

Serka agreed to pay the taxpayer advance royalties of $1000 upon the execution of the agreement and $100 per week for the full term of the patent. Advance royalties were to be credited against earned royalties, which were to be computed on the basis of 5 percent of the net selling price of each item made and sold by Serka. In 1966, the taxpayer received advance royalty payments of $4500 from Serka. This amount was not reported on taxpayer's 1966 return. Taxpayer later agreed that the advance royalty was taxable, but then claimed that the payment was subject to capital gain treatment.

Subsequent to concluding the 1966 agreement with Serka, the taxpayer unsuccessfully endeavored to interest other parties in utilizing the patents in fields other than those to which Serka had been given exclusive rights. In 1970, however, the taxpayer and Serka renegotiated their 1966 contract to extend Serka's rights to *all* possible commercial applications of the patent, *in consideration of increased payments to taxpayer*. (emphasis added)

The Commissioner determined that the royalties were not entitled to capital gain treatment, and therefore determined a deficiency of $707.01 plus an addition to tax under Code Section 6653(a).

The Tax Court held that the advance royalty payments received by the tax-

---

* Of the Central District of California. Judge Byrne participated in the argument and conference and agreed with the result, but did not participate in the final opinion, having died on March 9, 1974.

1. Both Mr. and Mrs. Mros are appellees here since a joint tax return was filed.

payer in 1966 were subject to capital gain treatment, on the ground that a grant of the exclusive right to a patented invention in a particular field of use qualifies as a transfer of "all substantial rights" under Code Section 1235. In so holding, it held invalid Section 1.1235–2(b)(1)(iii) of the Treasury Regulations, which excludes from the benefits of Section 1235 a grant of rights "in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant." The Commissioner timely filed notice of appeal.[2] We reverse.

I

Section 1235 of the Internal Revenue Code (1954) reads as follows:

*Sale or Exchange of Patents.*

(a) *General*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use or disposition of the property transferred.

The relevant Treasury Regulations (1954 Code) read as follows:

§ 1.1235–2. *Definition of terms.*

(b) *All substantial rights to a patent.*

(1) The term "all substantial rights to a patent" means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term "all substantial rights to a patent" does not include a grant of rights to a patent—

\* \* \* \* \* \*

(iii) Which grants rights to the grantee, in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant; . . .

\* \* \* \* \* \*

(c) *Undivided interest.* A person owns an "undivided interest" in all substantial rights to a patent when he owns the same fractional share of each and every substantial right to the patent. It does not include, for example, a right to the income from a patent, or a license limited geographically, or a license which covers some, but not all, of the valuable claims or uses covered by the patent. A transfer limited in duration by the terms of the instrument to a period less than the remaining life of the patent is not a transfer of an undivided interest in all substantial rights of a patent.

\* \* \* \* \* \*

Appellant argues that the taxpayer did not transfer "all substantial rights" to his gear reduction and clutch patents within the meaning of Section 1235 of the I.R.C., as properly interpreted by Section 1.1235–2(b)(1)(iii) of the Treasury Regulations. Such regulations exclude from the phrase "all substantial rights of a patent" the transfer of rights "in fields of use within trades or industries which are less than all the rights covered by the patent, which exist and have value at the time of the grant." Thus, since the 1966 agreement between the taxpayer and Serka contained a field of use restriction which limited applications of taxpayer's invention to hoists, winches, boat accessories, and air motor power drives, and since the record

2. This Court has jurisdiction under Section 7482 of the Internal Revenue Code of 1954.

established that taxpayer's invention had *other* valuable uses (clear evidence of this is the new contract made with Serka in 1970 which extended Serka's rights to all possible commercial applications of the patent in consideration of increased payments to the taxpayer), the royalties from the 1966 contract are not entitled to capital gain treatment.

## II

The limited case authority and congressional history available does support the position of the Commissioner.

The only case to date cited by either party in which an appellate court has dealt with the foregoing field-of-use regulation is Fawick v. Commissioner, 52 T.C. 104 (1969), rev'd 436 F.2d 655 (6th Cir.1971), wherein the Sixth Circuit reversed the Tax Court, and held that the regulation was a valid implementation of Section 1235 and the underlying Congressional intent, and that it was consistent with the longstanding principle of patent law that a sale is not accomplished unless the "whole patent" is transferred.

The analysis suggested by the Sixth Circuit to determine whether the taxpayer is entitled to Section 1235 benefits is a two-fold test, outlined as follows: (1) What did the taxpayer actually *give up* by the transfer; that is, was there an actual transfer of the monopoly rights in a patent; and (2) what did the taxpayer *retain* after the transfer; that is, are any substantial rights retained.[3]

Applying this two-fold test, the Sixth Circuit determined that since the record established that the *Fawick* patents had known value outside the marine service industry (the limited field of use license) at the time of the license, the transaction failed to qualify for capital gain treatment under Section 1235.

Applying this analysis (which we believe to be the correct one) to the present case, it is clear that the Mros patent transaction likewise cannot qualify for capital gain treatment. The record clearly establishes that the Mros patent had potential value in fields other than the limited field of use which was the subject of the 1966 agreement with Serka. The latter agreement in 1970 whereby *all* rights to the Mros patent in any field were transferred to Serka for increased payments is sufficient evidence of this. There is, in addition, the taxpayer's own statement at trial that his patent had potential applicability for a variety of fields.

A similar test to that of the Sixth Circuit was adopted by the Third Circuit in E. I. duPont de Nemours & Co. v. United States, 432 F.2d 1052 (3rd Cir.1970); however, under the facts of the *duPont* case (the District Court found that the rights reserved were valueless), the result was different.

Support for the position argued by the Commissioner is also found in the First Circuit's decision in Redler Conveyor Co. v. Commissioner, 303 F.2d 567 (1st Cir.1962). Both *Redler Conveyor* and *duPont* were cited with approval by the Court in *Fawick* even though neither of these cases dealt with either Section 1235 or the Treasury Regulation at issue in *Fawick* and in this present case.[4]

With regard to the Treasury Regulation 1.1235–2, the Sixth Circuit in *Fawick* pointed out that such regulation

3. For a further amplification of this analysis, and a good discussion of the background and purpose of Section 1235, see Fawick v. Commissioner, 436 F.2d at 659–665 (6th Cir. 1971).

4. Cases cited by the Tax Court in support of its ruling are the following: Bannister v. United States, 262 F.2d 175 (5th Cir. 1958); Merck & Co. v. Smith, 261 F.2d 162 (3rd Cir. 1958); and United States v. Carruthers, 219 F.2d 21 (9th Cir. 1955). Without attempting a detailed analysis of these cases, suffice it to say that none of them dealt with the field-of-use regulation, and that only the *Bannister* case dealt with the application of Section 1235. In any case, we find the analysis of the Sixth Circuit in *Fawick* to be the most persuasive authority.

was promulgated in 1965 (Section 1235 itself was enacted in 1954), after a number of courts which had considered the issue involved had come to arguably different conclusions. With regard to the validity of Treasury Regulations, the language of the United States Supreme Court in Commissioner v. South Texas Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948), is particularly instructive:

> "This Court has many times declared that Treasury regulations *must be sustained unless unreasonable and plainly inconsistent with the revenue statutes* . . . (and) should not be overruled except for weighty reasons." *Id.* 501, 68 S.Ct. 698 (emphasis added).

The Sixth Circuit in *Fawick* found that the regulation embodied the proper interpretation of Section 1235. We agree. The statute itself does not specifically determine whether a transfer for a limited field of use is entitled to be considered in a Section 1235 transfer. However, the statute does require that a transfer be a transfer of "all substantial rights" to a patent to be entitled to such preferential capital gain treatment. Thus, it would seem that the regulation is certainly not unreasonable and plainly inconsistent with the language of the statute.

A careful reading of the legislative history of Section 1235 likewise convinces us that a limited transfer of patent rights would not qualify for the preferred capital gain treatment. The following language from the Senate Report is particularly instructive:

> "It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee, rather than recognizing less relevant verbal touchstones. . . . Furthermore, retention by the transferor of rights in the property *which are not of the nature of rights evidenced by the patent* and which are not inconsistent with the passage of ownership, such as a security interest (e. g., a vendor's lien) or a reservation in the nature of a condition subsequent (e. g., a forfeiture on account of nonperformance) are not to be considered as such a retention as will defeat the applicability of this section." 3 U.S.Code Cong. & Admin. News (1954), p. 5083. (emphasis added).

In the instant case, the 1966 agreement between taxpayer and Serka clearly involved a transfer of rights to the patent for a limited field-of-use. The rights retained by the taxpayer in his patent were not in the nature of a security interest, but rather, were of the nature of rights evidenced by the patent. Thus, the congressional history available leads to the conclusion that such a limited transfer would not qualify for capital gain treatment, and that the Treasury regulation barring such treatment to a limited field-of-use transfer is valid. Any allowance of such preferential tax treatment to such a limited transfer of patent rights should have to come from Congress and not from this Court by an unwarranted extension of the literal mandate of Congress that "all substantial rights" to a patent must be transferred before capital gain treatment is allowed.

Accordingly, the decision of the Tax Court is reversed, and the case is remanded to that Court for further proceedings not inconsistent with this opinion.