**ESTATE of George T. KLEIN, Deceased, Shirley Klein, Personal Representative and Shirley Klein, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellant.**

**No. 74–1437.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1974.

Decided Dec. 17, 1974.

Scott P. Crampton, Asst. Atty. Gen., Arthur L. Bailey, Atty., Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellant.

Robert M. Weiss, Milwaukee, Wis., for petitioners-appellees.

Before MARIS,* CUMMINGS and PELL, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision of the Tax Court determining the income tax liability of George T. and Shirley Klein [1] for the years 1966, 1967 and 1968. The facts were stipulated and may be summarized as follows:

In 1957 George T. Klein organized Organic Compost Corporation of Wisconsin, with its principal office in Germantown, Wisconsin. Until his death in 1972, Klein was president and sole stockholder of the Wisconsin corporation which was given the authority to make, use and sell organic compost embodying an improved process for which Klein held United States Patent No. 2750269, issued to him in 1956. In December 1959, Organic Compost Corporation of Pennsylvania was formed under the laws of Pennsylvania with its principal office in Oxford, Pennsylvania. In the years 1966, 1967 and 1968, Klein owned 24% of the issued stock of the Pennsylvania corporation.

In 1960 Klein entered into an agreement with the Pennsylvania corporation which was, in effect, an assignment of the patent monopoly held by Klein but only as to certain specified eastern states and the District of Columbia. Klein retained the patent rights as to all other areas.[2] Under the terms of the agreement with the Pennsylvania corporation the licensee received the exclusive right to make, use and sell organic compost embodying the patented process for the life of the patent, the right to grant sublicenses and the right to bring and maintain suits against infringers in the licensee's own name. The licensor was to receive an annual minimum royalty of $7,500.00 and a percentage, increasing as the dollar volume of sales increased, of the licensee's gross sales of all organic compost embodying the patented process. The licensee agreed to keep records and to make them available for the licensor's inspection. The licensor retained the right to terminate the agreement in the event of the licensee's insolvency, the commission of an act of bankruptcy or

---

* Of the Third Circuit, sitting by designation.

1. Shirley Klein, the widow of George T. Klein, is a party to this suit as personal representative of his estate and in her own right, having filed joint tax returns with her late husband.

2. The Wisconsin corporation continued to produce the patented product subject to the terms of Klein's agreement with the Pennsylvania corporation and subject later to the terms of an agreement with a Texas corporation hereinafter described.

the making of an order for compulsory liquidation. The treatment for tax purposes of the royalties received by Klein in the three years in question, pursuant to his agreement with the Pennsylvania corporation, is the subject of the present controversy.

In 1968 Organic Compost Corporation of Texas was formed. Klein was a less-than-25% stockholder. In the same year Klein and the Texas corporation entered into an exclusive license agreement which transferred to the Texas corporation the exclusive right to make, use and sell organic compost embodying Klein's patented process in the limited area of eight southern and central states. Royalties under the agreement with the Texas corporation were received after the taxable years in issue and are not here involved.

A second agreement by Klein with Organic Compost Corporation of Pennsylvania was entered into in December 1969, expanding the Pennsylvania corporation's territorial license to include the entire United States. The Pennsylvania corporation then entered into sublicensing agreements with the Wisconsin and Texas corporations. On May 3, 1971, Klein assigned to the Pennsylvania corporation his entire interest in Patent No. 2750269, valued by the Pennsylvania corporation at $1,221,967. In exchange, Klein received 8,146 newly issued shares of stock of the Pennsylvania corporation with a book value of $150 per share, the total book value of the 8,146 shares being $1,221,900. Just prior to this transaction, 4,000 shares of stock of the Pennsylvania corporation were outstanding. On the same date, articles of merger were entered into by the three corporations and on June 30, 1971 the Texas and Pennsylvania corporations were merged into the Wisconsin corporation.

In their joint federal income tax returns for 1966, 1967 and 1968, George T. and Shirley Klein reported royalties received from the Pennsylvania corporation in those years as long-term capital gain, claiming eligibility for such favorable tax treatment under § 1235 of the Internal Revenue Code of 1954. The Commissioner, also relying on § 1235 as interpreted by Treas.Reg. 1.1235–2(b)(1)(i), as amended, determined that the royalties received pursuant to the 1960 agreement with the Pennsylvania corporation were taxable as ordinary income and he assessed deficiencies for the three years totalling $104,510.14. The Kleins filed a petition in the United States Tax Court for redetermination of the deficiencies. The Tax Court, following its earlier decision in Rodgers v. Commissioner, 1969, 51 T.C. 927, held that the petitioners were entitled under § 1235 to capital gains treatment and that to the extent that Treas.Reg. 1.1235–2 indicated the contrary, it was invalid. 61 T.C. 332. The Commissioner thereupon took the appeal to this court which is now before us.

Section 1235(a) of the Internal Revenue Code of 1954 provides:

> "§ 1235. *Sale or exchange of patents*
>
> "(a) *General.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—
>
> "(1) payable periodically over a period generally conterminous with the transferee's use of the patent, or
>
> "(2) contingent on the productivity, use, or disposition of the property transferred."

Section 1.1235–2 of the Treasury Regulations, as amended by T.D. 6852, October 1, 1965, provides in pertinent part:

> "§ 1.1235–2 *Definition of terms*
>
> .   .   .   .   .
>
> "(b) *All substantial rights to a patent.* (1) The term 'all substantial rights to a patent' means all

rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term 'all substantial rights to a patent' does not include a grant of rights to a patent—

"(i) Which is limited geographically within the country of issuance;

. . . . .

"(iii) Which grants rights to the grantee, in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant;

"(c) *Undivided interest.* A person owns an 'undivided interest' in all substantial rights to a patent when he owns the same fractional share of each and every substantial right to the patent. It does not include, for example, . . . a license limited geographically, . . . "

■ The sole issue which this appeal presents is whether the transfer of rights to his patent in a limited geographical area which Klein made to the Pennsylvania corporation in 1960 was a transfer of "all substantial rights" to the patent, within the meaning of § 1235 which would entitle him to the right under that section to treat the transaction as a sale of a capital asset as he did in his 1966, 1967 and 1968 income tax returns. The Tax Court held that it was such a transfer and that the provisions of Treasury Regulation 1.1235–2 which indicated the contrary were invalid. We conclude that the Tax Court erred in so holding, and that the Treasury Regulation is valid and correctly defines the term "all substantial rights to a patent" as used in § 1235 of the Revenue Act and that it supports the Commissioner's deficiency determination.

Prior to the enactment of § 1235 in the Internal Revenue Code of 1954, § 117 of the Internal Revenue Code of 1939 provided the criteria for the treatment as capital gain of amounts received upon the transfer of patent rights. Under subsection (a)(4) of that section the determinative question was merely whether a "sale or exchange" had taken place. Patent law specifically authorizes the assignment of a patent or of any interest therein or the grant of exclusive rights thereunder to the whole or any part of the United States, 35 U.S.C. § 261. Under § 117(a)(4) royalties based on the use of transferred patent rights had been treated as capital gains for income tax purposes. Myers v. Commissioner, 1946, 6 T.C. 258; Kronner v. United States, 1953, 110 F.Supp. 730, 126 Ct.Cl. 156; United States v. Carruthers, 9 Cir. 1955, 219 F.2d 21. And it was so held in the case of a transfer of patent rights limited to a particular geographical area. Marco v. Commissioner, 1955, 25 T.C. 544. The Commissioner, however, had announced in 1950 in Mimeograph 6490, 1950–1 CB 9, that if in the case of a transfer of patent rights payment was to be measured by royalties based on the production, sale or use of the property transferred or payable periodically over the period of the transferee's use of the property, he would regard the royalties thus paid as ordinary income and not capital gain. It was, in part, to settle the question thus raised that § 1235 of the 1954 Code was enacted. As we have seen, paragraphs (1) and (2) of § 1235(a) deal with this precise problem by providing that the payment of the purchase price in the form of such a periodic or contingent royalty shall not affect the legal nature of such a transaction as a sale or exchange of a capital asset.

Section 1235(a) went further, however, to provide, as we have seen, that the transfer of patent rights shall be considered a sale or exchange of a capital asset only if "all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights" are included in the transfer. In Rodgers v. Commissioner, 1969, 51 T.C. 927, the Tax Court took the view that this language of § 1235 was not intended to exclude from capital gains treatment a

transfer of patent rights limited geographically, and it followed and applied that decision in the present case. We cannot agree with this conclusion.

■■ The use of the word "substantial" is doubtless in recognition of the rule applied in Allen v. Werner, 5 Cir. 1951, 190 F.2d 840; Allied Chemical Corp. v. United States, 2 Cir. 1967, 370 F.2d 697, and similar cases, that the retention by the transferor of minor rights under the patent shall not affect the character of a transfer as a sale entitled to capital gains treatment. But we think that the statutory requirement that the "substantial rights" transferred shall be "all" of them, even in the case of the transfer of an undivided interest in them, indicates a Congressional intention that the transfer of a part of the patent rights, divided off from the rest by a limitation on their use or the geographical area of their exercise, shall not be deemed a sale or exchange of a capital asset. In reaching this conclusion we have been mindful of the canon that the words of a statute, and this includes a revenue act, should be given their ordinary everyday meaning. Crane v. Commissioner, 1947, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301; Malat v. Riddell, 1966, 383 U.S. 569, 570, 86 S.Ct. 1030, 16 L.Ed.2d 102.

We are fortified in our conclusion by the legislative history of § 1235. In the Senate Committee Report on the Code it is stated:

"By 'undivided interest' a part of each property right represented by the patent (constituting a fractional share of the whole patent) is meant (and not, for example, a lesser interest such as a right to income, or a license limited geographically, or a license which conveys some, but not all, of the claims or uses covered by the patent)." [3]

In thus stating that transfers of undivided interests which are included within the definition of the section are not to be confused with transfers of patent rights limited to specific uses or geo-

graphical areas the Senate Finance Committee indicated, we think, that such limited transfers were not intended to be included within the parameters of § 1235.

■ By T.D. 6852, approved October 1, 1965, the Secretary of the Treasury amended Treas.Reg. § 1.1235–2, which defines "all substantial rights to a patent" as used in § 1235 of the 1954 Code, by adding to subsection (b) the following language, *inter alia:*

"The term 'all substantial rights to a patent' does not include a grant of rights to a patent—

"(i) Which is limited geographically within the country of issuance;

.    .    .    .

"(iii) Which grants rights to the grantee, in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant; .    .    . " 1965–2 CB, p. 289.

The Secretary has broad authority under § 7805(a) of the Internal Revenue Code of 1954 to promulgate reasonable regulations implementing the provisions of the revenue laws. The regulations may, of course, be amended from time to time when the Secretary deems it appropriate, as, for example, when it appears from the decisions of the courts that provisions of the laws may be so ambiguous as to require further implementation or interpretation. Such regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes". Commissioner v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831. Here our independent inquiry into the language and history of § 1235 has led us to the conclusion that transfers of patent rights limited to a geographical area were not intended by Congress to be included with the statutory term "all substantial rights to a patent", the transfer of which might give rise to a capital gain. We,

---

**3.** S.Rep.No.1622, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News, p. 5082.

therefore, cannot say that § 1.1235–2 of the Regulations as amended by T.D. 6852 is in this regard unreasonable or inconsistent with § 1235 of the Code.

We need only add that our conclusion is supported by recent decisions of the Courts of Appeals for the Sixth and Ninth Circuits, Fawick v. Commissioner, 6 Cir. 1971, 436 F.2d 655, and Mros v. Commissioner, 9 Cir. 1974, 493 F.2d 813. In each of these decisions subsection (b)(1)(iii) of Regulation 1.1235–2, as amended, was upheld over the Tax Court's decision of invalidity. It is true that clause (iii) relating to use division was involved in those cases whereas here we are dealing with clause (i) relating to geographical division. But we see no difference in principle between the two with respect to the problem with which we are here concerned.

Reversed and remanded.