David R. BLAKE and Betty H. Blake, Plaintiffs-Appellees and Cross-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellant and Cross-Appellee.

Nos. 77–1635, 77–1636.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1979.

Decided Feb. 25, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Helen A. Buckley, Tax Div., U. S. Dept. of Justice, Washington, D. C., Gilbert E. Andrews, Stuart E. Seigel, Chief Counsel Internal Revenue Service, Richard Perkins, Richard Farber, Washington, D. C., for defendant-appellant and cross-appellee.

David R. Blake, Betty H. Blake, pro se.

Before MERRITT and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

BAILEY BROWN, Circuit Judge.

The principal issue raised by this appeal is whether the royalties paid by a licensee to the taxpayer-appellee as holder of a patent were long term capital gain to taxpayer under § 1235 of the Internal Revenue Code of 1954 or were ordinary income. The Commissioner of Internal Revenue found that such royalties were ordinary income and determined an income tax deficiency; on a petition to redetermine the deficiency, the Tax Court held (67 T.C. 7 (1976)) that such royalties were long term capital gain and the Commissioner brought this appeal. There is also an issue whether certain infringement damages payable to taxpayer were accruable in 1968 as taxpayer contended with which the Commissioner disagreed; the Tax Court held that they were not accruable in 1968 and taxpayer appealed.

I

The relevant facts as stipulated or as found by the Tax Court (and which are not in dispute) can be rather briefly summarized.

A. Factual background of capital gain issue.

Taxpayers are David R. Blake (hereafter referred to as "Taxpayer") and his wife Betty H. Blake, who filed joint returns for the years 1969 and 1970. It was on these returns that taxpayer, the holder of the patent, reflected the royalties received as long term capital gain.

In 1948, taxpayer filed for a patent on a leveling device for tables and chairs (referred to as a "glide") and a patent was issued in 1955. In 1954, taxpayer entered into a license agreement with American Seating Company (American Seating)

whereby it was granted the right, for the life of the patent, to make, have made, use and sell glides but only in the public seating field, i. e. furniture and equipment for schools, churches, courtrooms, theatres and hospitals but excluded furniture designed for restaurant and cafeteria use. The royalty to be paid was eight-tenths of a cent on each glide sold.

In 1960, taxpayer entered into an exclusive license agreement with Ever-Level Glides, Inc. (Ever-Level) to make, have made, use and sell glides for the life of the patent, subject, however, to the American Seating license. It is agreed that the only commercially worthwhile use of the patent outside of the public seating field (covered by the American Seating license) is the restaurant field and is agreed that, upon the license to Ever-Level, taxpayer, as holder of the patent, retained no commercially worthwhile rights that could be the subject of further licensing.

Taxpayer reported royalties payable by both American Seating and Ever-Level as long term capital gain. The Commissioner disagreed. The Tax Court held that royalties payable by American Seating were ordinary income, and taxpayer did not appeal this holding. However, as before indicated, the Tax Court held that the royalties payable by Ever-Level were long term capital gain from which holding the Commissioner has appealed. Further, as also indicated, this is the principal issue on this appeal.

B. Factual background of other issues.

Taxpayer and Ever-Level cancelled their license agreement in 1969, and as part of the cancellation agreement Ever-Level transferred to taxpayer all rights to recover damages for infringement in the field covered by Ever-Level's license. Prior thereto, taxpayer and Ever-Level had jointly sued Stewart-Warner Corporation for infringement. In 1967, a federal court had held that the patent had been infringed; and its decision had been affirmed on appeal, certiorari had been denied, and Stewart-Warner had set up a reserve for its liability of $43,304 (royalty and interest) in 1968.

However, Stewart-Warner moved to vacate the judgment and moved for a rehearing en banc, which were denied in 1969, and a second petition for certiorari was denied on 1970. Later, in 1970, a special master determined, after having reviewed 2,300 pages of testimony and 200 exhibits, that Stewart-Warner had sold 4,716,470 infringing glides of which 3,065,856 were in the field covered by Ever-Level's license. He determined a reasonable royalty rate to be seven percent of sales and that taxpayer was entitled to recover damages of $51,496.76. The master also determined that Ever-Level was entitled to recover $131,893 as lost profits. Taxpayer settled the whole claim against Stewart-Warner for $171,694.88.

Taxpayer, on the accrual basis, contends that he was entitled to accrue in 1968 all or at least some of the amount payable by Stewart-Warner and contends that that part of the recovery attributable to royalties was long term capital gain. The Commissioner contended otherwise, and the Tax Court held that taxpayer was not entitled to accrue any of this income in 1968 but that the royalty component was long term capital gain. Taxpayer has therefore appealed the holding of the Tax Court that he was not entitled to accrue in 1968, and the Commissioner has appealed the holding that the payment by Stewart-Warner was in part long term capital gain.

Taxpayer also reported infringement damages received from United Industrial Syndicate as long term capital gain, it being his contention that such were in effect royalties for infringement in Ever-Level's field of use. The Commissioner contended otherwise. The Tax Court held that the proof did not support such attribution to Ever-Level's field of use and therefore held this to be ordinary income from which taxpayer appealed.

Since we hold that all royalties payable by Ever-Level were ordinary income, it follows and we hold that, for this reason, no part of the payment made by Stewart-Warner is long term capital gain and that the payment made by United Industrial Syndicate is likewise ordinary income.

## II

■ It is taxpayer's position, succinctly stated, that since he, as the patent holder, in 1960 transferred to Ever-Level all of his *remaining* substantial rights to the patent, this was a transfer to Ever-Level of "property consisting of all substantial rights to a patent" within the meaning of § 1235 of the Code. On the other hand, it is the position of the Commissioner that, since taxpayer had, prior to 1960, transferred substantial rights to the patent to American Seating, taxpayer's transfer to Ever-Level in 1960 was not a transfer of "property consisting of all substantial rights to a patent" within the meaning of § 1235. Taxpayer, therefore, contends that the royalties received from Ever-Level should be afforded long term capital gain treatment under § 1235 since he transferred to Ever-Level all of the patent rights that he had at the time of the transfer. The Commissioner contends, on the other hand, that this transfer to Ever-Level did not satisfy the requirements of § 1235 because all patent rights in existence at the time of the transfer were not transferred to Ever-Level.

We conclude that, under the reasoning of this court in *Fawick v. Commissioner*, 436 F.2d 655 (6th Cir. 1971), the Commissioner was correct and the Tax Court was in error and therefore we reverse the Tax Court. Indeed, the Tax Court, in its opinion, recognized that it was refusing to follow the reasoning of this court in *Fawick*, and it also in effect held to be invalid a Treasury Regulation that had been specifically upheld in *Fawick*.

Section 1235 of the Code provides in relevant part as follows:

SEC. 1235. SALE OR EXCHANGE OF PATENTS.

(a) *General.* A transfer . . . of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

The Treasury Regulation (1954 Code) § 1.1235–2 provides in relevant part:

§ 1.1235–2 *Definition of terms.*

\* \* \* \* \* \*

(b) *All substantial rights to a patent.* (1) The term "all substantial rights to a patent" means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term "all substantial rights to a patent" does not include a grant of rights to a patent—

(i) Which is limited geographically within the country of issuance;

\* \* \* \* \* \*

(iii) Which grants rights to a grantee, in fields of use within trades or industries, which are less than all the rights covered by the patent, which exist and have value at the time of the grant; or

(iv) Which grants to the grantee less than all the claims or inventions covered by the patent which exist and have value at the time of the grant.

Thus under the plain words of the statute and certainly under the Regulation, the transfer by taxpayer to Ever-Level of his remaining rights to the patent, after having transferred substantial rights to American Seating, simply does not satisfy the test established by § 1235 for long term capital gain treatment.

This court, in *Fawick*, in tracing the history that lead to the enactment of § 1235, pointed out that prior thereto only amateur inventors could obtain capital gain treatment for royalty payments (since otherwise the patent would not be a capital asset in the hands of the inventor) and even an amateur inventor's right to treat his receipt of royalty as capital gain was questioned unless he received it in a lump sum. Thus

the purpose in enacting § 1235 was twofold: to allow professional as well as amateur inventors an opportunity to enjoy long term capital gain treatment for their royalties and to allow such treatment even though royalties are payable periodically and even though payment is contingent on the productivity or use of the patent. Even so, as the *Fawick* court pointed out, long term capital gain treatment of royalties is afforded to the holder of the patent if and only if the transfer of rights in the patent that produces such royalties is a transfer of all existing substantial rights which have commercial value. In this respect the *Fawick* court said:

> With the above cited legislative history as background, it is our opinion that a two prong inquiry is necessary to determine if a transaction qualifies for special treatment under § 1235. The initial inquiry for determining whether or not there has been a transfer by the holder of "property consisting of all substantial rights to a patent" requires consideration of what the holder has left after the transfer. If he retains any substantial rights to the patent, then he has not transferred the property that comprises all those rights.
>
> If the taxpayer can show that he has no substantial rights in the patent after the transfer, as a second inquiry we must look at what he actually relinquished to the transferee. It is our opinion that the phrase "all substantial rights to a patent" is a reference to the monopoly right for which the patent stands. The monopoly right granted by the patent is the right to exclude others from making, using, or selling the invention. This necessarily encompasses the right to exclude others from any particular industrial field in which those others might choose to use the invention. This is the right that must be sold to the transferee, and the transfer must cover all practical fields-of-use for the invention. (Footnote omitted)

*Fawick v. Commissioner of Internal Revenue*, 436 F.2d 655 at 662.

It is true that, in *Fawick*, the precise question presented here was not before the court; the question presented there was the question before the Tax Court in the instant case with respect to the tax treatment of the American Seating royalties. Nevertheless, as stated, the reasoning of *Fawick* applies here and the Regulation held to be valid in *Fawick* clearly applies here.

The Tax Court initially got off the track in applying § 1235 in *William S. Rouverol*, 42 T.C. 186 (1964) and has stayed off the track * in spite of a series of reversals in: *Fawick v. Commissioner*, 52 T.C. 104 (1969), rev'd, 436 F.2d 655 (6th Cir. 1971); *Mros v. Commissioner*, 1971 P.H.T.C.Memo.No. 71,-123, rev'd, 493 F.2d 813 (9th Cir. 1974); and *Klein v. Commissioner*, 61 T.C. 332 (1973), rev'd, 507 F.2d 617 (7th Cir. 1974), cert. denied, 421 U.S. 991, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975). Thus it appears that not only is the holding here required by the holding of this court in *Fawick* but is also consistent with the holdings of other courts of appeal that have dealt with this issue.

### III

Since we have held that the royalties payable by Ever-Level to taxpayer were ordinary income, it follows that infringement damages paid by Stewart-Warner and United Industrial Syndicate, even to the extent that they were in the nature of royalties and even if the royalties related to the field of use covered by the Ever-Level license, were ordinary income.

Thus the only remaining question for decision is taxpayer's contention that all or at least part of the infringement damages paid by Stewart-Warner were accruable in 1968 although the special master did not submit his report and a settlement was not reached until 1970.

As we understand taxpayer's contention, which is his strongest position, it is that at least the reserve set up by Stewart-Warner in 1968, after the Supreme Court denied

* In its decision in the instant case below holding the royalties payable by American Seating to be ordinary income, the Tax Court thereby got one set of wheels back on the track.

certiorari the first time, in the amount of $43,304 ($36,783 in royalties and $6,521 in interest) could and should be accruable by him in that year. The Commissioner contends, on the other hand, that no accrual could take place in that year because all the events fixing the right to receive the income had not occurred and because, in any event, the amount of such income could not be ascertained with reasonable accuracy, relying on such cases as *Gillis v. United States*, 402 F.2d 501 (5th Cir. 1968) which so holds.

The record does not show the basis of Stewart-Warner's motion to vacate and for an *en banc* hearing and the second petition for certiorari, and therefore it is difficult if not impossible to make a judgment whether, after denial of the first petition for certiorari, all events fixing the right to receive the income had occurred by 1968. We conclude, as did the Tax Court, that in any event the amount of the income to be accrued could not be ascertained with reasonable accuracy in 1968. It was not until later, in 1970, that the special master, after investigating the contentions of the parties, determined and reported that a reasonable royalty to be paid by Stewart-Warner was seven percent and that the number of infringing glides sold by it was 4,716,470. We therefore affirm the holding of the Tax Court that no part of the infringement damages paid by Stewart-Warner was accruable by taxpayer in 1968.

The judgment is reversed in part and affirmed in part and is remanded for further proceedings consistent with the views herein expressed.