**Don and Irene KUENEMAN, John R. Kueneman, and Edmund W. and Ella M. Harrell, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 78–1807.**

United States Court of Appeals, Ninth Circuit.

Submitted June 17, 1980.

Decided Aug. 11, 1980.

Rehearing Denied Oct. 14, 1980.

---

Joseph L. Strabala, San Francisco, Cal., for petitioners-appellants.

Gilbert E. Andrews, Tax Div., Washington, D.C., on brief; Michael J. Roach, Washington, D.C., for respondent-appellee.

Before SNEED and POOLE, Circuit Judges, and ZIRPOLI,* District Judge.

POOLE, Circuit Judge:

This is an appeal by five taxpayers from a decision of the United States Tax Court determining deficiencies in their federal income taxes for the years 1971 and 1972. During these years, appellants Don and Irene Kueneman, John Kueneman, and Edmund and Ella Harrell reported royalty payments received from an exclusive transfer of patent rights within a specified geographical area as long-term capital gains on their federal income tax returns. The Tax Court held that this did not constitute a transfer of "all substantial rights" to the patent within the meaning of Section 1235

of the Internal Revenue Code of 1954, and that appellants could not report royalty payments as long-term capital gains.[1] Notice of appeal was timely filed. Our jurisdiction rests on 26 U.S.C. § 7482. We affirm.

This case was submitted to the Tax Court on stipulated facts which may be summarized as follows:

Taxpayers Don Kueneman and John Kueneman were the principal investors of a type of rock-crushing machine for which they obtained patents in the 1940's. In 1946, they entered into an agreement which altered the ownership of the patents so that John Kueneman, Don Kueneman, Alma Harrell, and Cyril Kenville, held specified undivided ownership interests. In November, 1948, John Kueneman, who was authorized to act on behalf of the others, entered into a licensing agreement with Pennsylvania Crusher Co., (Crusher), a New York corporation. In return for specified royalty payments, the license granted Crusher the exclusive right to make, vend, and use the patented machinery throughout Puerto Rico, eastern Canada, and all of the United States east of North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, and Texas, during the lives of the patents.[2]

In 1971 and 1972 Don and Irene Kueneman and Edmund and Ella Harrell filed joint federal income tax returns while John Kueneman filed individual tax returns. All reported receipt of royalty payments from Crusher, which they treated as long-term capital gains.[3] Relying upon § 1235 as interpreted by Treasury Regulation 1.1235–2(b)(1)(i), the Commissioner of the Internal Revenue Service determined that the royalty income was ordinary income and assessed substantial deficiencies against the taxpayers.

---

* Honorable Alfonso J. Zirpoli, Senior United States District Judge for the Northern District of California, sitting by designation.

1. All statutory references are to the Internal Revenue Code of 1954 in effect during the years in issue.

2. The last patent subject to the agreement expired in 1976.

3. Appellants had reported royalty payments received from Crusher as capital gains on their income tax returns each year since 1957.

The taxpayers filed a petition in the Tax Court for redetermination of the deficiencies on the basis of two Tax Court decisions which had held that an exclusive geographical patent transfer automatically disposed of all substantial rights to the patent and qualified for capital gain treatment under § 1235. *See Estate of Klein v. Commissioner*, 61 T.C. 332 (1973), *rev'd.* 507 F.2d 617 (7th Cir. 1974), *cert. denied* 421 U.S. 991, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); *Rodgers v. Commissioner*, 51 T.C. 927 (1969).[4] The Tax Court then re-examined its interpretation of § 1235 because of the general appellate criticism of these precedents. *See Estate of Klein, supra; Mros v. Commissioner*, 493 F.2d 813 (9th Cir. 1974) (patent transfer subject to field-of-use restriction does not dispose of all substantial rights under § 1235); *Fawick v. Commissioner*, 436 F.2d 655 (6th Cir. 1971) (same) *rev'g.* 52 T.C. 104 (1969). It held that taxpayers' exclusive geographical transfer did not automatically dispose of "all substantial rights" in their patent under § 1235. This holding overruled *Estate of Klein* and *Rodgers v. Commissioner* to the extent they had held to the contrary. Finding that the taxpayers' retained patent rights were substantial,[5] the Tax Court ruled that their royalty income was taxable as ordinary income.[6] *Kueneman v. Commissioner*, 68 T.C. 609 (1977).

The sole issue is whether appellants' exclusive transfer of their patent rights within a specified geographical area was a transfer of "all substantial rights" to the patent within the meaning of § 1235. If so they are entitled to treat royalty payments as long-term capital gains. We conclude that it was not such a transfer.

Section 1235(a) provides:

"§ 1235. Sale or exchange of patents.

"(a) General.—a *transfer* (other than by gift, inheritance, or devise) *of property consisting of all substantial rights to a patent*, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(2) contingent on the productivity, use, or disposition of the property transferred."

(Emphasis added)

The relevant Treasury Regulations, § 1.1235–2, as amended by T.D. 6852, October 1, 1965, provide in pertinent part:

"§ 1.1235–2. Definition of terms.

. . . . .

"(b) All substantial rights to a patent. (1) The term 'all substantial rights to a patent' means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. *The term 'all substantial rights to a patent' does not include a grant of rights to a patent—*

"(i) *Which is limited geographically within the country of issuance*;

"(c) Undivided interest. A person owns an *'undivided interest'* in all substantial rights to a patent when he owns the same fractional share of each and every substantial right to the patent. It *does not include*, for example, . . . *a license limited geographically*, . . . ."

(Emphasis added)

---

**4.** It also overturned § 1.1235–2(b)(1)(i) of the Treasury Regulations in these cases. See p. 1198, *infra* for text of this regulation.

**5.** Under Rule 142(a), Tax Court Rules of Practice and Procedure, the taxpayer bears the burden of establishing that the transfer disposed of "all substantial rights" to the patent. The taxpayers presented no evidence that the rights they retained were without value, perhaps be-

cause the Tax Court adopted a different legal standard.

**6.** Because the taxpayers did not establish that their transfers complied with § 1235 and the Treasury Regulations general definition of all substantial rights, the court did not determine the validity of § 1.1235–2(b)(1)(i), *Income Tax Regulation*, 68 T.C. at 619. *See* 1198, *supra*.

Appellants argue that their transfer disposed of "all substantial rights" to their patents under § 1235, reasoning that they thereby relinquished the monopoly right conferred by the patents to make, use, and sell the patented invention within the specified geographic area. They assert that the Tax Court misconstrued the legislative history and cases involving field-of-use restrictions. Their position is that Congress intended for an exclusive geographic transfer of patent rights to qualify for capital gains treatment under § 1235. Conceding that a patent transfer subject to a field-of-use restriction does not constitute the sale of a capital asset, *see Mros v. Commissioners, supra; Fawick v. Commissioner, supra,* they argue that the rationales of these cases are inapplicable to an exclusive geographic transfer.

The Seventh Circuit appears to be the only appellate court which has considered the tax consequences of a geographically limited transfer of patent rights and the validity of Treasury Regulation § 1.1235–2(b)(i). *Estate of Klein v. Commissioner,* 507 F.2d 617, 621 (7th Cir. 1974), reversed the Tax Court and held that an exclusive transfer of a patented process for the production of organic compost in certain eastern states did not relinquish "all substantial rights" to the patent within the meaning of § 1235. The Court said that the statutory requirement that "all substantial rights" be transferred indicated Congress' intent that a transfer of a part only of the patent rights should not be considered a sale or exchange of a capital asset. It found support for this conclusion in the Senate Committee Report excluding geographically limited transfers from consideration under § 1235 as an "undivided interest." *See* 3 U.S.Code Cong. & Admin.News, pp. 4025, 5082 (1954); p. 1201, *infra.* Treasury Regulation § 1.1235–2(b)(i) was seen as consistent with the statutory language and underlying Congressional intent.

The Seventh Circuit also found support in our decision in *Mros v. Commissioner, supra.* In *Mros,* we reversed the Tax Court and held that the transfer of patent rights to a gear reduction device for a limited industrial field-of-use did not transfer "all substantial rights" in the patent under § 1235. Relying upon the analysis suggested by the Sixth Circuit's decision in *Fawick v. Commissioner, supra,* 436 F.2d at 662–63, that a patent transfer subject to a field-of-use restriction did not qualify for capital gains treatment under § 1235, we adopted a two-prong test to determine whether a taxpayer is entitled to § 1235 benefits:

(1) What did the taxpayer actually *give up* by the transfer; that is, was there an actual transfer of the monopoly rights in a patent; and (2) what did the taxpayer *retain* after the transfer; that is, are any substantial rights retained.

*Mros v. Commissioner, supra,* 493 F.2d at 816; *see Fawick v. Commissioner, supra,* 436 F.2d at 659–665 (explaining analysis and background and purpose of § 1235); *E. I. DuPont de NeMours & Co. v. United States,* 432 F.2d 1052 (3rd Cir. 1972) (similar test used but reserved rights were valueless). Since the patent in *Mros* had potential value in fields-of-use other than the field that was the subject of the transfer, we concluded that such a transaction could not qualify for capital gains treatment. The legislative history supported this conclusion, and we also upheld Treasury Regulation 1.235–2(b)(i) as a valid implementation of § 1235.

Appellants argue that geographic divisions are fundamentally distinguishable from field-of-use divisions. We agree and recognize that *Mros* is not controlling in this case. The separate Treasury regulations and body of case law concerning field-of-use transfers and geographical area transfers reflect their separate and distinct nature. But this is not to say that the approach used in *Mros* is inapposite to a transfer subject to a geographical restriction. The *Mros* analysis embodies the language of § 1235 and its underlying legislative history. Field-of-use and geographical divisions must both comply with § 1235 as construed in accordance with the legislative history in order to qualify for capital gains.

Accordingly, we conclude that the standard embraced in *Mros* in the context of a field-of-use transfer for determining whether a taxpayer is entitled to § 1235 benefits applies also to an exclusive geographical transfer. *See Estate of Klein v. Commissioner, supra,* 507 F.2d at 622 (no difference in principle under § 1235 between field-of-use transfers and geographic transfer).

Thus, applying our two-prong analysis, it is clear that appellants' geographically limited transfer does not entitle them to capital gains treatment under § 1235. A patent gives the patent holder the monopoly right to make, use, and sell the patented invention throughout the United States during the life of the patent, *see* 35 U.S.C. § 271(a), and to exclude others from doing so. To qualify for the capital gains advantage it is this right that must be transferred, and in the context of a geographical transfer it must include all areas of the United States in which the patented invention has potential value. Appellants relinquished their monopoly rights in the patented rock-crushing machine only in the eastern portion of the United States. They transferred less than all the monopoly rights represented by the patent, retaining the exclusive rights to make, use, and vend the patented machine in the western portion of the United States. The record does not indicate that these retained monopoly rights were not substantial. Consequently, we find that appellants have failed to establish that their exclusive geographical transfer disposed of "all substantial rights" to their patents within the meaning of § 1235.[7]

We have carefully reviewed the legislative history of § 1235 and are convinced that its supports our analysis. Congress enacted § 1235 as an incentive to investors and to assure them that their license royalties would be afforded capital gains treatment whether payments were payable periodically or contingent on the use of the property transferred. *See* U.S.Code Cong. & Admin.News at 5082 (1954); *Fawick v. Commissioner, supra,* 436 F.2d at 660–61. This was, however, conditioned on the transfer by the patent holder of property consisting of all substantial rights to a patent. A transfer of patent rights limited to geographical area is not a transfer of "all substantial rights." In *Mros, supra,* 493 F.2d at 817, we found this instructive language from the Senate Report:

"It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context *to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee,* rather than recognizing less relevant verbal touchstones. . . . *Furthermore, retention by the transferor of rights in the property which are not of the nature of rights evidenced by the patent and which are not inconsistent with the passage of ownership,* such as a security interest (e. g., a vendor's lien) or a reservation in the nature of a condition subsequent (e. g., a forfeiture on account of non-performance) are not to be considered as such a retention as will defeat the applicability of this section." 3 U.S. Code Cong. & Admin.News (1954) p. 5083. (Emphasis added)

We believe Congress used the phrase "all substantial rights to the patent property" to refer to the monopoly rights represented by the patent throughout the United States.

---

7. Thus, we reject the argument that a patent transfer such as this qualifies for capital gains treatment as an express assignment under *Waterman v. MacKenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). As the Sixth Circuit explained in *Fawick v. Commissioner, supra:*

". . . *Waterman v. MacKenzie* . . . is not authority for determination of the present issue one way or the other. That case was concerned with whether or not a transfer was of a character that would give the transferee the right to sue and did not involve the tax consequences of the transfer. Section 1235 does not speak in terms of assignments or licenses, but rather, it is concerned with the transfer of all substantial rights to a patent, and whether that transfer falls within the *Waterman* definition of an assignment or not is of no consequence to the operation of the statute." 436 F.2d at 665.

*See Fawick v. Commissioner, supra,* 436 F.2d at 662. This conclusion is fortified by the legislative history which explains the language of § 1235 providing that capital gain treatment is proper where a patent owner transfers "an undivided interest." The Senate Committee Report states:

"By *'undivided interest' a part of each property right represented by the patent* (constituting a fractional share of the whole patent) *is meant (and not, for example, a lesser interest such as* a right to income, or *a license limited geographically,* or a license which conveys some, but not all, of the claims or uses covered by the patent)." 3 U.S.Code Cong. & Admin.News, p. 5082 (1954).

(Emphasis added)

A transfer limited geographically was to be excluded from consideration as an "undivided interest" because it does not convey a "fractional share of each property right represented by the patent." Therefore, transfer of such a "lesser interest" does not transfer "all substantial rights" to the patent—the entirety of each property right evidenced by the patent.

The Secretary has broad authority to promulgate reasonable regulations to implement the revenue laws, under § 7805(a) of the Internal Revenue Code of 1954, and to amend the regulations when he deems it appropriate. The Supreme Court has instructed that ". . . Treasury regulations *must be sustained unless unreasonable and plainly inconsistent with the revenue statutes* . . . (and) should not be overruled except for weighty reasons." *Commissioner v. South Texas Co.,* 333 U.S. 496, 566, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948) (Emphasis added).

■ We conclude, as did the Seventh Circuit, that this regulation represents the proper interpretation of § 1235. *See Estate of Klein v. Commissioner, supra,* 507 F.2d at 621–22. We therefore determine that § 1.1235–2 of the Regulations as amended by T.D. 6852 is neither unreasonable or plainly inconsistent with § 1235.

AFFIRMED.